[No. 3,149.]

# THE OAKLAND RAILROAD COMPANY *v.* THE OAKLAND, BROOKLYN, AND FRUIT VALE RAILROAD COMPANY.

A Franchise.—A franchise obtained by grant from the Legislature has
the legal character of an estate or property.

Forfeiture.—While a forfeiture at common law does not operate to divest
the title of the owner until a suit is instituted for that purpose, and the
rights of the State are established by judgment, yet it is otherwise when
a forfeiture is declared by statute.

Forfeiture Declared by Statute.—When a forfeiture is declared by
statute the title to the thing forfeited immediately vests in the State, upon
the commission of the offense, or the happening of the event, for which the
forfeiture is declared.

Forfeiture of Franchise.—If a franchise is granted by the Legislature
to construct a street railroad within a certain time, with a condition, that
if the provisions of the Act are not complied with the franchise shall be
forfeited, a failure to lay the track within the time limited works a for-
feiture of the right to lay the same without a judgment at the suit of the
State declaring a forfeiture, and the Legislature may confer the franchise
upon any other company or person.

Grant by City Councils to Lay Street Railroads.—The Act of 1870
(Stats. 1869-70, p. 786), granting to City Councils the power to authorize
street railroads to be laid down in streets in a city, does not prohibit such
Councils, when there is one railroad track in a street, from granting the
right to construct another in the same street.

Division of Franchise by Assignment.—If the grantee of a franchise to
construct a street railroad makes an assignment of a portion of his fran-
chise, and the assignee enters into possession, the question whether the
grantee can thus divide his franchise is one which concerns the public
alone.

Appeal from the District Court of the Third Judicial Dis-
trict, County of Alameda.

The plaintiff filed a bill praying for an injunction restrain-
ing the defendant from constructing a railroad on the east

side of the center of Broadway street.    An application was made for a preliminary injunction, which was heard on complaint and answer, and was denied.

The other facts are stated in the opinion.

*D. P. Barstow* and *C. A. Tuttle*, for Appellant.

First—The grant to appellant was for the term of thirty years, and the condition therein that the whole road should be completed within five years from the passage of the Act, was a condition subsequent. (See *Brooklyn Central R. R. Co.* v. *Brooklyn City R. R. Co.*, 32 Barb. 358; *Thompson* v. *The People,* 23 Wend. 577; *Spring Valley Water Works* v. *San Francisco*, 22 Cal. 440; *People* v. *Manhattan Co.*, 9 Wend. 351.)

Second—The proviso in section nine of said Act, that if the provisions of the Act are not complied with the franchise and privileges granted shall cease and be forfeited, does not destroy the franchise of its own force, without proceedings commenced on behalf of the State to procure a judgment of forfeiture. (*People* v. *Manhattan Co.*, 9 Wend. 351; *Bear Camp River Co.* v. *Woodman*, 2 Greenl. 404; 11 Paige, 118; *People* v. *Hilledale Turnpike Co.*, 23 Wend. 255; *Bank of Niagara* v. *Johnson*, 8 Wend. 645.)

Third—A failure to comply with a condition subsequent does not enable a third party to raise the question in a collateral proceeding. (*Kellogg* v. *The Union Co.*, 12 Com. 19; *Sewall's Falls Bridge* v. *Fisk*, 3 Foster, 178; *Pearce* v. *Olney*, 20 Conn. 556; Angell & Ames on Corporations, Sec. 177, and Note 1; *Thompson* v. *The N. Y. and H. R. R Co.*, 3 Sandford Ch. 625; 5 Mass. 236.)

Fourth—Appellant's franchise remains good until judicially declared forfeited in a suit on behalf of the State. (*President, etc.* v. *Trenton Bridge*, 2 Beasley, 46; 9 S. & M. 394; *People* v. *Oakland County Bank*, 1 Doug. 282.)

Fifth—Equity has jurisdiction to grant relief for an inva-

sion of appellant's franchise.   (3 Kent, 459; 1 John. Ch. 610.)

Sixth—The grant to Tompkins and Murphy was to lay down a track upon Broadway street, from the southerly end thereof to the northerly charter line of the city, while Tompkins and Murphy only empowered respondent to enter upon a portion of said line, to wit: that portion south of the intersection of Broadway and Twelfth streets.   This did not confer any right upon respondent, for it was an assignment of only a portion of the franchise.   The franchise cannot be thus divided, as it would enable the grantees to assign to many different persons, and the assignees to collect as many fares as there were assignments.   (*Donnelly* v. *Vandenbergh*, 3 John. 27.)

Seventh—The franchise granted to appellant in 1866, by the Act, passed out of the State, and could not be reinvested in the State, except by judgment in an action on behalf of the State; so that when the ordinance of May 22d, 1871, was passed by the Council of Oakland, the franchise to lay a track upon said line was vested in appellant, and respondent took nothing by the ordinance.   (*Thompson* v. *The People*, 23 Wend. 584.)

*W. W. Crane, Jr.*, for Respondent.

It appears that at the expiration of the five years appellant had completed only one track on Broadway between the Waterfront and Fourteenth street, and had not finished the work as far as the lands of the College of California—in other words, it had not performed its part of the contract; and even if it acquired any property in the track used, it had certainly lost all right to lay down the second track, or any right of way in that part of the street not already appropriated.   The case of *Rush* v. *Jackson*, 24 Cal. 309, seems to be precisely in point.

The most obvious dictates of public policy require that

street railroad, wharf, and other franchises of a public nature should receive this strict construction—that they should be considered as contracts imposing the obligation upon the grantee to perform all the conditions required of him within a reasonable time, when the Act is general, as in the case quoted, or within the period specified when the Act designates a limitation in time, otherwise the public interests may be materially injured by designing parties obtaining grants from the Legislature similar to that of appellant, then lying by without doing anything, waiting to levy contributions upon those who in aid of the public necessities, at some period in the twenty-five or thirty years of the grant, as the case may be, desire to use the streets or highways for a like enterprise.

There have been since the organization of the State many franchises granted which have never been taken advantage of. For instance, in 1866 (Laws 1866, p. 605), there was granted to R. J. Vandewater and associates, the right to construct and operate, for the period of thirty years, a horse railroad on seven of the principal streets of Oakland, with provisos as to the time of commencement and completion of the work, and that if not complied with the privileges should be forfeited. The grantee never did anything under the grant, and is now dead. If the theory of appellant is correct, then Vandewater's heirs have a right of way in those streets until 1896, which cannot in anywise be interferred with until a judgment of forfeiture has been obtained at the instance of the State. If such a forced construction can be placed upon that and similar grants, then the public is indeed in an unfortunate position. (*Rice* v. *Railroad Company*, 1 Black. 358; *Richmond* v. *North London Railway Co.*, 5 Equity Cases, 352; Eng. Law Reports, 1867-8; *N. Y. Housatonic and Northern R. R. Co.* v. *Boston, Hartford and Erie R. R. Co.*, 36 Connecticut, 196; *Parmlee* v. *Oswego R. R. Co.*, 2 Selden, 80; *Brookville Turnpike Co.* v. *McCarthy*, 8

Indiana, 394; 1 Redfield's Law of Railways, 3d ed. 64; 2 Redfield's Law of Railways, 3d ed. 445.)

Even if the conditions specified in the grant to appellant are conditions subsequent, and not precedent, still the State had the right to reënter upon a non-performance of them, and regrant the same franchise to respondent.

Redfield says (Vol. 1, pp. 322, 819), speaking of street railroad franchises: " This, then, although an exclusive franchise, so far as the carrying of passengers and taking tolls is concerned, is a mere estate at will, so far as the legislative power is concerned, or the general demands of the public interest may require, through the action of the municipal authorities."

The appellant, at most, had but an estate for thirty years.

Kent says (4 Com. 128): "There is this further distinction to be noted between a condition annexed to an estate for years and one annexed to an estate of freehold, that in the former case the estate, *ipso facto*, ceases as soon as the condition is broken; whereas, in the latter case, the breach of the condition does not cause the *cesser* of the estate, without an entry or claim for that purpose. It was a rule of the common law that where an estate commenced by livery it could not be determined before entry. When the estate has, *ipso facto*, ceased by the operation of the condition, it cannot be revived without a new grant; but a voidable estate may be confirmed, and the condition dispensed with."

And it necessarily follows, that if the estate for years granted to appellant, *ipso facto*, ceased upon the breach of the conditions, then the State could grant to the respondent the right to lay its track in the unoccupied lines described in the first franchise.

The right of reëntry, or to grant, was vested by the Legis-

lature in the Council of the City of Oakland. (Laws 1869–70, pp. 481, 786.) And that body regularly granted the right to Murphy and Tompkins, the assignors of respondent, who went into possession under their grant, and were lawfully in when this action was commenced, as the grantees of the State. (3 Blackstone Comm. 174; *Taylor* v. *Cole*, 3 Term, 295.)

By the Court, BELCHER, J.:

This is an appeal from an order refusing to grant an injunction. An order to show cause was made, and upon the hearing the injunction was denied. The motion was submitted upon the complaint and answer, from which the following facts appear:

By an Act of the Legislature, approved on the 3d day of March, 1866 (Stats. 1865–6, p. 164), the plaintiff, a corporation, was granted for the term of thirty years the right to construct and lay down a railway track within the corporate limits of the City of Oakland, and in Alameda County, and to run horse cars thereon, commencing at the southerly end of Broadway, in said city; thence through said street to the northern limits of the city; thence along the telegraph road to the crossing of Temescal Creek; thence to the grounds of the College of California.

By the terms of the grant it was provided that from the southerly end of Broadway to the crossing of Fourteenth street there should be two tracks—one laid each side of the center of the street, and as near to the center as they could be placed and allow the cars to pass and repass with safety—and from thence along Telegraph Road a single track, continuous with that along the west side of Broadway. It was further provided that work should be commenced within six months, and one track be laid within the limits of the City of Oakland within eighteen months, and the whole

road completed within five years from the passage of the Act. It was also provided "that if the provisions of this Act are not complied with, then the franchise and privileges herein granted shall utterly cease and be forfeited."

Work was not commenced within six months, nor was one track laid within the limits of the City of Oakland within eighteen months after the passage of the Act, but in February, 1868, the Legislature passed an amendatory Act (Stats. 1867–8, p. 31), whereby it extended the time for the commencement of the work to three years, and for the completion of one track to three years and six months from the passage of the original Act, but it left unchanged the time for the completion of the whole road.

Work was commenced and a single track completed within the time named for that purpose in the amendatory Act, along the west side of Broadway to the crossing of Fourteenth street, and thence along the Telegraph road to the crossing of Temescal Creek; but at the end of five years after the passage of the Act of 1866, nothing had been done towards laying down a track on the east side of Broadway, or towards extending the road from Temescal Creek to the grounds of the College of California.

In March, 1870, an Act was passed by the Legislature (Stats. 1869–70, p. 481), authorizing the City Council of any incorporated city to grant to any person or corporation the right to lay down and maintain for a term of years an iron railway track or tracks upon any street or avenue of the city, and to run cars thereon propelled by horses, and to carry passengers and freight thereon. Under this Act the Council of the City of Oakland granted to Edward Tompkins and Thomas J. Murphy, their associates and assigns, by an ordinance passed on the 22d of May, 1871, the right to lay down and maintain for the term of twenty-five years an iron railroad track upon Broadway, from the southerly end thereof to the northerly charter line of the city, and to run

cars thereon to be propelled by horses or mules, and to carry passengers and freight thereon. The grantees accepted this grant, and thereafter, on the 9th day of September, 1871, assigned and transferred to the defendant all their rights and privileges under the said ordinance in and to that part of Broadway lying south of Twelfth street. This assignment was approved by a resolution of the Common Council of the city, passed on the eighteenth day of the same month, and the defendant was thereby authorized to lay down and maintain a railroad track upon and along that part of Broadway immediately to the east of the plaintiff's track and as near thereto as cars could pass and repass with safety.

On the ninth day of the same month the plaintiff commenced to lay down a railroad track along the east side of Broadway, from Twelfth street south, and on the twelfth of the month had laid the track as far south as Tenth street. On that day the defendant commenced at Tenth street to lay down its railroad track, south, along the east side of the street, and on the line where the plaintiff proposed to lay its track, and was proceeding with its work when this action was commenced.

No question arises in this case in reference to the plaintiff's right to maintain and use the railroad track constructed by it within five years after the date of its grant. But no track having been constructed, and no steps taken towards constructing one along the east side of Broadway within the time limited by the Act, the question is presented as to what rights the plaintiff acquired on that side of the street, and what, if any, it still retains.

It is now claimed for the plaintiff that the condition annexed to its grant was a condition subsequent; that a present right to use the street for the purpose of the construction and maintenance of its proposed railroad became vested in it, and that it could exercise that right at any time, until a

forfeiture should be declared in an action commenced for that purpose at the suit of the State.

The defendant, on the other hand, contends that the condition annexed to the grant was a condition precedent; that the plaintiff took nothing until it entered upon the performance of the work, and that when the time limited elapsed, it had no rights whatever in the street, except in so far as it had constructed its road.

Conceding that the plaintiff's grant was upon condition subsequent, still it does not follow that its rights in that part of the street where it had not constructed a road could be determined only by a judgment of forfeiture.

The grant was of a franchise, which had the legal character of an estate or property. "An estate," said Chancellor KENT, "in such a franchise and an estate in land rest upon the same principle, being equally grants of a right or privilege for an adequate consideration." (3 Kent's Com. 458.)

Now, while a forfeiture at common law does not operate to divest the title of the owner until by a proper judgment in a suit instituted for that purpose the rights of the State have been established, it is otherwise when the forfeiture is declared by a statute. In the latter case the title to the thing forfeited immediately vests in the State upon the commission of the offense or the happening of the event for which the forfeiture is declared, or at such other time and upon such other condition as the statute may name. The authorities to this effect are numerous and uniform.

"It has been proved," said MARSHALL, C. J., "that in all forfeitures accruing at common law nothing vests in the Government until some legal step shall be taken for the assertion of its right, after which, for many purposes, the doctrine of relation carries back the title to the commission of the offense; but the distinction taken by the counsel for the United States between forfeitures at common law and those accruing under a statute is certainly a sound one. When a

forfeiture is given by a statute the rules of the common law may be dispensed with, and the thing forfeited may either vest immediately or on the performance of some particular act, as shall be the will of the Legislature. (*United States* v. *Grundy*, 3 Cranch, 151.)

"The forfeiture takes place on the commission of the act prohibited, and by the forfeiture the property is immediately divested out of the owner before any seizure or suit." (*Kennedy* v. *Strong*, 14 Johns. 129.)

In some of the cases the question has been directly presented whether, after the forfeiture has taken place, but in the absence of any judgment declaring the forfeiture, the former owner could maintain any action in reference to the forfeited property, and it was held that he could not. Thus in *Wilkins* v. *Despard*, 5 Term R. 112, the action was trespass against the Governor of an English Colony for seizing a vessel and cargo, the property of the plaintiff. The defendant pleaded that before the seizure the vessel and cargo had violated the Navigation Act, and had thereby become forfeited to the Government. The plaintiff replied that without any sentence of condemnation by a Court having competent jurisdiction in that behalf, the defendant had sold and disposed of the vessel and cargo, and converted the same to his own use. To the replication there was a demurrer, which was sustained by the Court of King's Bench, on the ground that by the forfeiture, which the demurrer admitted, the title of the plaintiff was divested, and he could not therefore maintain the action, although the defendant had not proceeded to a condemnation.

In *Fountain* v. *Phœnix Insurance Compauy*, 11 Johns. 293, the action was upon a policy of insurance effected upon the plaintiff's vessel from New York to St. Bartholomew, and at and from thence back to New York, with liberty to touch and trade at Martinique. On her outward voyage the vessel stopped at Martinique, discharged her cargo and was taking

on return cargo, when in a storm she was driven on shore and lost.   The plaintiff having obtained a verdict for a total loss, a new trial was granted, upon the ground that if the cargo which had been taken on was intended for the United States, it was a violation of the non-intercourse law of the United States, which denounced a forfeiture therefor, by which the vessel would be forfeited and the property immediately vested in the United States, so that the owners would have no longer any insurable interest in her.

In *Bennett* v. *The American Art Union,* 5 Sandf. 614, the plaintiff, a subscriber to the defendant association, alleged in his complaint that the defendant was engaged in the distribution of works of art to its subscribers by means of a lottery or game of chance; and that unless the defendant were restrained from making the distribution the personal property of the association would be forfeited and wholly lost to its members or subscribers.   The Court, dissolving a temporary injunction which had been granted, on the ground that upon the face of his complaint the plaintiff had no title to relief, said: " The entire property, if the annual distribution is a noxious lottery, before the complaint was filed was, in my judgment, vested in the State.   It was so vested by force of the forfeiture which the statute declares of all property that shall be offered for sale or distribution contrary to its provisions—a forfeiture which by the express words of the law may attach as well before as after the determination of the chance upon which the determination depends."   And again: " If the intended distribution, which I am asked to enjoin, is in any criminal sense a lottery, it is the property of the people of the State that this Court is required to take into its possession and dispose of for the benefit of the shareholders in the Art Union.   It is not probable that we shall soon venture upon such an exercise of our jurisdiction."

In *New York, Housatonic, and Northern Railroad Company* v. *The Boston, Hartford, and Erie Railroad Company,* 36 Ct.

196, an injunction was sought to restrain the defendant from placing its track upon ground already appropriated for railroad purposes by the plaintiff.   The plaintiff had located its railroad through the Town of Danbury, and its location had been approved by the Railroad Commissioners.   It had constructed a single track as far west as the site selected for a depot, and had graded for a double track, intending, however, to lay a single track only for the present, leaving the southerly and easterly side of the roadbed for the second track whenever the business of the road should require it. East of the depot the defendant had made its location upon the ground prepared by the plaintiff for its second track; and west of the depot it had followed, not exactly the line of the plaintiff's location, but so as to cross it four times in the space of about one mile.   This, it was claimed, practically destroyed that part of the plaintiff's road or at least seriously impaired its usefulness.   The plaintiff was proceeding to construct its road under the provisions of the Acts of the Legislature—one, a private Act, passed in 1868, extending the time for the plaintiff to complete its road, and the other, a general Act, passed in 1867.   By the terms of the former Act the plaintiff was required to procure and pay for the right of way for its location within twelve months after the rising of the General Assembly, or the approval given by the Railroad Commissioners to the location should be void.   By the latter Act all companies were required to procure and pay for the right of way of all lands through which they might pass, within twelve months after their survey should be accepted by the Railroad Commissioners, or the acceptance should be void.   The plaintiff had failed to procure the right of way within the time limited by either Act, and it was contended by the defendant that it had thereby lost its right in the location.   The Court said: "We think the respondents are right in both claims. So far as the resolution of 1868 is concerned, the case is

within its letter and is too clear for argument, unless there is force in the petitioner's objection, that it is in the nature of a forfeiture, and the neglect or omission of the company can be taken advantage of only in a direct proceeding against the company in behalf of the State, for the purpose of procuring a judgment of forfeiture.   But we think this position is 'not tenable."   The Court further said: "The principal and perhaps the only object which the Legislature had in view was to prevent such surveys from being a cloud upon the title of real estate an unreasonable length of time. We shall give effect to that intention best by holding that the statute is operative and effectual at the instance of the owner of the land—the party directly interested—and for whose protection the statute was passed, 'independent of any action by the State.  Any other construction would impair the effect of the statute, and might in some cases, defeat the legislative intent altogether."

In *Borland* v. *Lewis*, 43 Cal. 569, the action was ejectment to recover a parcel of swamp and overflowed land.  The plaintiff had purchased the land of the State on a credit of five years, under an Act authorizing such credit, upon payment of one year's interest in advance, and the interest thereafter annually in advance.  Among other things, the Act provides that "if any person or persons purchasing lands upon a credit of five years, as provided in section five of this Act, shall fail or neglect to pay the principal and interest within the said term of five years from the date of the certificate of purchase, or shall fail or neglect to pay the interest, as required by this Act, for the space of one year from the time such interest may become due, or shall fail or neglect to reclaim at least one half of the land so purchased within the said term of five years, such neglect or failure shall work a forfeiture of such land, and the same shall be

resold, as if no purchase had been made." The plaintiff had not paid the interest, as required; but it was contended, in his behalf, that there could be no forfeiture for that reason, until the same should be judicially declared in an action commenced for that purpose. But it was held by the Court that the Act intended to make the failure to pay interest for one year after it became due operate as a complete forfeiture of all the purchaser's rights in the land, and the defendant was, therefore, permitted to avail himself of the plaintiff's want of title to defeat the action.

In this case it is clear that the Legislature intended, by the restriction as to the time within which the plaintiff's work must be completed, that it should have no rights in the streets of Oakland if it failed to exercise them within five years. This intention was expressed in the most explicit terms, for, as we have seen, it declared that upon failure to comply with the provisions of the Act, "then the franchise and privileges herein granted shall utterly cease and be forfeited." Not to give effect to this declaration would be to frustrate and defeat the legislative will.

It is also claimed for the plaintiff that the Act of March, 1870, did not authorize the City Council to make any grant to Tompkins and Murphy of the right to lay down a railroad track on Broadway, since that street was already partially occupied by the plaintiff. The proviso to section one of the Act, when taken in connection with the preceding portion of the section, may not be altogether clear in its meaning; but we think the true construction of it is that when one railroad has been constructed in a street, and another company desires to use it jointly with its owners, it may be authorized to do so, upon the terms specified, for two blocks, but that it was not intended to be a limitation upon the power already given to grant an independent right.

The last point made is, if the Council had authority to make the grant to Tompkins and Murphy, that they, having

the right to lay down a track along Broadway, from the southerly end thereof to the northerly charter line of the city, could not assign to the defendant a part of that right, and thus divide their franchise. It may be that the franchise ought not to be divided; that the public would be better served if the road were continuous, under one management, from the southern to the northern end of the street; but if it be so, it is a matter which concerns the public, and not the plaintiff.

It follows that the Court did not err in refusing the injunction, and its order is affirmed.