## Case No. 17,105.

### WALLAMET FALLS C. & L. CO. v. KITTRIDGE.

[5 Sawy. 44; 5 Reporter, 104; 10 Chi. Leg. News, 113; 24 Int. Rev. Rec. 142; 1 San Fran. Law J. 259.] [1]

Circuit Court, D. Oregon. Dec. 10 and 17, 1877.

DISSOLUTION OF CORPORATION — SUSPENSION OF BUSINESS—DISSOLUTION—WINDING UP.

1. The corporation act of Oregon, § 16 (Laws Or. p. 528), declares that if any corporation shall neglect and cease to carry on its business for any period of six months, its corporate powers shall cease. *Held*, that such neglect did not terminate the existence of the corporation as by lapse of time, but that it was a cause of forfeiture of the corporate privileges of which no one but the state could complain or take advantage.

[Cited in Re Brooklyn El. R. Co., 125 N. Y. 441, 26 N. E. 475.]

2. The corporation act aforesaid (section 19) provides that a majority of the stockholders may authorize the dissolution of a corporation. *Held*, that a vote of the stockholders, authorizing a dissolution, did not of itself dissolve the corporation, nor compel the directors to do so, and that the act of dissolution must proceed from the directors, who alone can exercise the corporate powers.

[Distinguished in Wells v. Oregon Ry. & Nav. Co., 15 Fed. 565. Cited in Powell v. Oregonian Ry. Co., 38 Fed. 189.]

[Cited in Strong v. McCagg, 55 Wis. 629, 13 N. W. 898.]

3. Section 19 of the corporation act of Oregon (Laws Or. p. 538) empowers the majority of the stockholders to authorize the dissolution of the corporation "and the settling of its business and disposition of its property and dividing of its capital stock in any manner it may see proper." *Held*: (1) That the authority to the directors to dissolve the corporation carried with it the incidental power to collect and distribute its assets and wind up its affairs; and (2) that a vote of the directors declaring the corporation dissolved only operates to prevent it from engaging in new business, but the corporation continues to exist. notwithstanding the declaration of dissolution. for the purpose of collecting and distributing its assets and winding up its affairs.

Action [by the Wallamet Falls Canal & Lock Company against Jonathan Kittridge] upon a bond to secure the performance of a contract.

William Strong, for plaintiff.
Charles B. Upton, for defendant.

DEADY, District Judge. The plaintiff is a corporation formed under the laws of Oregon, to construct a canal and locks at the Wallamet Falls, near Oregon City. The defendant is a citizen of California and a party with F. L. A. Pioche, John Morris, E. N. Robinson, and A. H. Jordan, to a bond given on March

---

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 5 Reporter, 104, and 24 Int. Rev. Rec. 142, contain only partial reports.]

20, 1871, conditioned for the performance of a contract of the same date, between the plaintiff and said Morris, Robinson and Jordan, for the construction of said work by the latter. The contractors having failed, as it is alleged, to complete the canal and locks according to the contract, this action was brought on September 7, 1874, against the defendant to recover the penalty of said bond, —thirty thousand dollars. Among other defenses, the amended answer, filed May 17, 1876, contains the following: 1. That since the commencement of this action, the plaintiff, at a meeting of its stockholders, called for that purpose, "authorized dissolution of said corporation without authorizing or providing for settling its business, and said corporation has thereby ceased to exist." 2. That on May 1, 1876, the plaintiff ceased to carry on the business for which it was formed, and has not since transacted or carried on any of such business, and has ceased to exist.

The plaintiff demurs to these pleas as not constituting a defense to the action. The first of them is founded upon section 19 of the corporation act (Laws Or. p. 528), which provides that a corporation, at a meeting of its stockholders, called for such purpose, may, by a vote of the majority of its stock, among other things, authorize the dissolution of such corporation and the settling of its business and the disposing of its property and dividing its capital stock in any manner it may, see proper. The second plea is founded on section 16 of said act (Laws Or., supra), which provides that if any corporation organized thereunder, "shall for any period of six months after the commencement of its business, neglect and cease to carry on the same, its corporate powers shall also cease."

It is admitted by counsel for the defendant that a forfeiture of the plaintiff's corporate powers cannot be set up to defeat this action. But it is claimed that the non-existence of a corporation may always be pleaded to an action professed to be brought by it; as that it was never duly created or had ceased to exist by lapse of time; and that under the provision cited from section 16, whenever a corporation neglects to use its powers for any one period of six months it ceases to exist, the same as if its corporate life had then expired by lapse of time. But in my judgment the language—"its corporate powers shall cease," is the substantial equivalent of the phrase "its corporate powers shall be forfeited." In either case the statute does not execute itself. An inquiry must be made to ascertain whether the corporation has kept the conditions subsequent upon which its creation was authorized and permitted. If there has been a failure to keep any such condition no one can allege it or take advantage of it but the state which created or authorized the corporation. In this respect a corporation is like an estate in fee. If a condition subsequent is annexed to such an estate, no one but the grantor or his successors can take advantage of its non-performance. Schulenberg v. Harriman, 21 Wall. [88 U. S.] 63. Upon the question of whether the words—"its corporate powers shall cease," import a forfeiture of the corporate existence rather than an actual termination of the same, as by lapse of time, the case of Frost's Lessee v. Frostburg Coal Co., 24 How. [65 U. S.] 283, is in point. There the law provided that in case four fifths of the capital stock of a corporation became concentrated in the hands of less than five persons "the corporate powers and privileges shall cease and determine," and it appearing that the stock of the corporation defendant was so owned, the court held that it was a cause of forfeiture of which a private party could not take advantage; saying; "That is a question for the sovereign power, which may waive it or enforce it at its pleasure." In Chesapeake & O. Canal Co. v. Baltimore & O. R. Co., 4 Gill & J. 1, it was held that a violation of a provision in a charter of a corporation, to the effect that on a breach of a certain condition such corporation should not be entitled to any privilege under the act of incorporation, and that all its interest thereunder should be forfeited and cease, did not ipso facto work a dissolution of the corporation. See, also, to the same effect, People v. President, etc., of Manhattan Co., 9 Wend. 382; Bradt v. Benedict [17 N. Y.] 93; Mickles v. Rochester City Bank, 11 Paige, 118. That this provision in section 16, supra, concerning the non-user of corporate powers, is a condition subsequent and not a limitation upon the existence of the corporation, is further shown by the Code of Civil Procedure, which provides (section 353, subd. 3) that an action may be maintained in the name of the state "for the purpose of avoiding the charter or annulling the existence of such corporation, * * * whenever it has forfeited its privileges or franchises, by failure to exercise its powers." Here, the state has provided a direct judicial proceeding to annul the existence of a corporation which has failed to exercise its powers for such a period and under such circumstances as causes a forfeiture of its privileges —the very case described in section 16, supra. Indeed, this declaration of the statute is simply intended to define and make certain what kind and duration of neglect or non-user of the corporate powers shall be a sufficient cause of their forfeiture. Without the statute the question in each case was involved in the uncertainty of determining whether, under all the circumstances, the neglect was willful and material. Ang. & A. Corp. p. 776. But now the statute furnishes a certain and prescribed rule. A neglect to exercise the powers of the corporation for six months works a forfeiture without reference to the cause or consequence of such neglect. But this action can only be brought in the name of the state and upon leave granted by the judge of the court. Neither the forfeiture nor the fact of non-user can be set up by a private person for any purpose. It must first be judicially

ascertained and declared on the complaint of the state. Ang. & A. Corp. § 777. The demurrer to this defense is sustained.

The first of these defenses is also bad. A majority of the stock at a stockholders' meeting may authorize the dissolution of the corporation; but I do not think they can or thereby do dissolve it or compel the directors to do so. The power of dissolution, like the other powers of the corporation, are vested in the directors and exercised by them. Laws Or. p. 526, § 9. True, the exercise of this power by the directors must first be authorized by the stockholders, but a dissolution does not result from such authorization, or necessarily follow it. It may be made with a view of meeting future contingencies, and in any event it must depend upon the subsequent action of the directors, who may, for any reason sufficient to themselves, decline or forbear to use the authority conferred upon them by the stockholders. If B. authorizes A. to execute a deed it is not thereby executed. The authority and the execution of it are distinct. Both the vote of the stockholders and the action of the directors are necessary to produce a dissolution of the corporation; but the immediate act of dissolution must proceed from the directors. The inconvenience, if any, of a disagreement between the stockholders and directors upon the necessity or expediency of a dissolution, can be remedied at the annual election of directors, when the majority of the stockholders may choose a board who will conform to their wishes in the matter.

December 17, 1877. The defendant having amended his said first plea, upon a demurrer thereto the same was held insufficient.

DEADY, District Judge. The amended plea alleges that the plaintiff, by the act of its directors done in pursuance of a majority vote of its stockholders, became and was duly dissolved and thereby ceased to exist without said vote "authorizing or providing for settling its business." The plea does not conclude that by reason of the facts stated therein this debt became and is extinguished, but upon the argument of the demurrer it was maintained by counsel for the defendant that such was the legal effect of the transaction. The argument for the plea is, that the stockholders may vote to authorize the dissolution of a corporation without at the same time authorizing a settlement of its business, a disposition of its property or division of its capital stock; and, that in such case, if the corporation is dissolved by the directors in pursuance of such authority, its debts are extinguished and its property escheats to the state or reverts to the grantors.. At common law, upon the death or dissolution of a corporation its real property reverted to the donors and its personal property escheated to the king, while the debts due to and from it were thereby extinguished and all actions pending for or against it at the time, abated. Ang. & A. Corp. §§ 179, 195. This doctrine had its origin when corporations were either municipal or ecclesiastical, and being dissolved for non-use or abuse of their powers, their real property, which was usually acquired as a donation to public or pious uses, was held to revert, upon the cessation of the use, to the donors and their personal property to escheat to the king for want of owners. In these cases there were no stockholders or natural persons who were entitled, equitably or otherwise, to the assets of the deceased corporations, and, as in the case of an individual dying without heirs, the personalty went to the king; but to prevent the realty from escheating to the king, it was held to revert to the donor upon the theory that the grant being made to the corporation for a public or private use, was made only for its life. Ang. & A. Corp. § 195. But this rule so far as the modern business and commercial corporation is concerned, has become practically obsolete. Its unjust operation upon the rights of creditors and stockholders has been generally prevented by statute. And in equity the assets of such a corporation which represent not the donations of the prince or its pious founder, but the contributions of its stockholders are held, independent of statute, to constitute a trust fund into whosesoever hands they may come for the benefit of creditors and stockholders. Curran v. Arkansas, 15 How. [56 U. S.] 311; Bacon v. Robertson, 18 How. [59 U. S.] 480; 2 Kent, Comm. 307a; Ang. & A. Corp. § 779a.

Admitting, however, that in the absence of any statute provision to the contrary, the common law rule, that the civil death of a corporation extinguishes all debts due to or from it, still applies to actions at law, yet it being manifest that corporations like the plaintiff are not within the reason of the rule and that the same has been generally superseded by legislation, the provisions of section 19, supra, ought to be so construed, if possible, as to keep the case out of the rut of what Chancellor Kent, calls the now "obsolete and odious" rule of the common law and accomplish the manifest purpose of the legislature, that is, to allow a corporation to terminate its existence and collect and distribute its assets in its own name, whenever and in any manner the stockholders may deem best. Now this plea of the defendants does not allege that the act, resolution or proceeding of the directors dissolving this corporation did not provide for the collection of its assets, including this debt. But it is assumed that unless the vote of the stockholders expressly authorized such collection as well as the dissolution, the directors could not provide for the former, although they might declare the dissolution. Upon this view of the matter, which seems to be based upon the idea that the dissolution, settlement of business, disposition of property and division of capital provided for in the statute, are distinct and independent subjects the more

reasonable conclusion seems to be that the stockholders cannot authorize a dissolution of the corporation unless they also expressly authorize the settlement of its business, etc. But I think the most reasonable and practical construction of the section is, that the power to authorize the settlement, disposition and division mentioned is a mere amplification or unfolding of the power to authorize the dissolution, which has been inserted therein out of abundance of caution, and that the stockholders may authorize the directors to dissolve the corporation, and that by a necessary implication such authority gives them power to provide for the winding up of its affairs. The authority to dissolve the corporation implies the power to provide for the necessary consequences of such dissolution, the collection and distribution of its assets among its creditors and stockholders according to their respective rights. But the stockholders may, if they see proper, go farther and prescribe the mode of doing this, subject of course to the legal rights of such creditors and stockholders. The rights of creditors are to be considered in this matter as well as those of the corporation or stockholders. A corporation may be largely in debt, and its stockholders may be liable to it for a like amount upon their subscriptions to the capital stock. The statute ought not to be construed so as to permit the stockholders to secure the dissolution of the corporation without the settlement of its business, and thereby extinguish this indebtedness, to the manifest wrong and injury of the creditors and their own unjust gain.

It is very doubtful whether a corporation can be dissolved outright under this section, at least unless the scheme or declaration of dissolution provides completely and effectually for the full and just settlement of its affairs. The object of the section is to enable the stockholders of a corporation to bring its business to a close before the expiration of the time for which it was incorporated, without incurring the penalty or inconvenience of forfeiture for non-user. In the absence of any specific directions to the contrary, the dissolution takes effect at once only so far as to deprive the corporation of the power of engaging in new business; but for the purpose of completing unfinished business and winding up its affairs, it continues to exist as long as may be necessary, or until it expires by lapse of time, or is declared dissolved by the judgment of a competent court.

In conclusion, I think this plea bad: (1) Because it does not appear therefrom but that the directors upon providing for the dissolution of the corporation, also specifically provided for the prosecution of this action, and the disposition of any judgment that might be obtained in it; and (2) because, even if it appeared that no special provision was made concerning this claim, the corporation continues to exist, notwithstanding the declaration of dissolution for the purpose of collecting and distributing its assets and winding up its affairs. The demurrer is sustained.

[Subsequently the plaintiff demurred to an amended plea, which demurrer was sustained. See Case No. 17,104.]