SANTA ROSA CITY R. CO. v. CENTRAL ST. RY. CO.*

No. 15,202; January 6, 1895.

38 Pac. 986.

**Municipal Ordinance—Presumption as to Adoption.—Where for Fourteen Years** after the passage of an ordinance the city recognized its existence and validity, and treated it as duly adopted and published, it will be presumed to have been approved by the mayor and published as required by the city's charter.

**Municipal Ordinance—Certificate of Publication.—Where a city** charter requires that ordinances shall be published only by order of the council, and that the city clerk shall keep a book into which he shall copy each ordinance, with a certificate annexed to the copy stating, among other things, that it was published according to law, the certificate of the clerk that the ordinance was published is sufficient evidence that the order for publication was made.

**Franchise.—The Right to Avoid a Public Grant for Failure to** perform a condition subsequent is confined to the government.

**Franchise.—A Public Grant cannot be Avoided for Failure to** perform a condition subsequent, except through a court's judgment, or a legislative declaration of forfeiture, unless the statute creating the condition expressly declares that a failure to perform it will, ipso facto, avoid the grant.

**Street Railway Franchise—Forfeiture—Statute not Self-executing.—Under the Civil Code** (section 502), providing that, where a franchise has been granted to a street railroad, work on the road must be commenced within one year from the date of the grant of right of way, and finished within three years thereafter, and that a failure to comply with such provision "works a forfeiture" of the right of way as well as of the franchise, when a street railroad fails to comply with that provision, its right of way and franchise continue to exist until declared forfeited by a court or by legislative authority, said section not being self-executing.

**Street Railway Franchise—Manner of Forfeiture.—When a** city railroad's franchise is liable to forfeiture for a breach of condition subsequent, forfeiture thereof is not effected by the city's granting the same rights to another company.

**Street Railway Franchise—Estoppel to Claim Forfeiture.—** Where a city granted a street railroad franchise to two persons, who organized a corporation to operate a railroad thereunder, and thereafter the franchise became liable to forfeiture because the road was

*For subsequent opinion in bank, see 112 Cal. 436, 44 Pac. 733.

not constructed on certain streets within the specified time, but for eleven years after the breach, with full knowledge thereof, the city, in dealing with the company, by resolutions, orders, and ordinances, recognized the franchise as valid and in force, and took legal steps to enforce the obligations assumed by the company thereunder, and the company in consequence incurred expense in paving the streets on which its tracks were laid, and in paying taxes, the city and the public are estopped to claim a forfeiture of the franchise or deny the company's ownership thereof.

Street Railway.—Where a Street Railroad Franchise was Granted to two persons, and they thereupon organized a corporation for the express purpose of constructing and operating a railroad under the franchise, and so declared in the articles of incorporation, an assignment of the franchise by said persons to the corporation was not necessary to vest the latter with any right relating thereto.

Street Railway—Injunction Against Another Company.—In an action by a street railroad company, operating its road under a franchise, to enjoin another railroad company, claiming the right to construct a road on the same street under a subsequent franchise, from tearing up plaintiff's tracks, plaintiff need not show ownership of the franchise under which it operates, its actual possession of the street being sufficient as against defendant.

Street Railway—Injunction Against Another Company.—Where a street railway company, claiming the right to construct its road over a street under a franchise, tears up the tracks and interferes with the operation of the road of another company already operating on said street under a prior franchise, the latter may bring an action to enjoin said acts, and recover its actual damages on account of them.

Street Railway—Injunction Against Another Company.—In an action by the company to enjoin the tearing up of its tracks, an ordinance passed after its franchise became liable to forfeiture, granting plaintiff the right to construct a switch, which right should "extend until the expiration of the term . of the franchise" first granted, was admissible, as tending to show both the original existence of the franchise and a waiver of the forfeiture.

Municipal Ordinance—Order for Publication.—Testimony of a City Clerk that after search he was unable to find among the city records any orders for the publication of certain ordinances is admissible to show the nonexistence of those orders.

APPEAL from Superior Court, Sonoma County; S. K. Dougherty, Judge.

Action by the Santa Rosa City Railroad Company against the Central Street Railway Company for an injunction and

damages. From a judgment for defendant, and an order denying a new trial, plaintiff appeals. Reversed.

Barham & Bolton and Van R. Paterson for appellant; W. F. Russell and Rutledge & Pressley for respondent.

VAN FLEET, J.—This is an action for an injunction to restrain defendant from tearing up the track of plaintiff's railroad, and from interfering with the running of plaintiff's cars, and for damages for acts of interference already committed. A preliminary injunction was granted; but, on the hearing, the injunction was dissolved, and judgment rendered for defendant. Plaintiff appeals from the judgment and an order denying its motion for a new trial.

On the trial the following facts were proved without any substantial conflict: On October 3, 1876, Mark L. McDonald and Jackson R. Meyers petitioned the common council of the city of Santa Rosa to grant to them and their assigns the privilege of constructing and operating a street railroad on certain streets of said city. On the same day the common council passed a resolution granting to the petitioners and their associates the privilege requested. On May 11, 1877, the petitioners and certain other persons incorporated the corporation plaintiff, for the express purpose of constructing and operating said street railroad, and it was so stated in the articles of incorporation. On June 5, 1877, the city council passed an ordinance, numbered 16, granting to said McDonald and Meyers, "their associates, successors, or assigns," authority to construct said railroad, and to maintain the same and propel cars thereon for the term of fifty years. This ordinance, among other things, provided that the tracks should be kept "flush and even with the street," and that the holders of the franchise should "plank, pave, or macadamize the entire length of the street used by the track, between the rails and for two feet on each side thereof." This ordinance is found, in regular order, in the official book of ordinances of the city, with the signatures of the mayor and clerk, but without the certificate required by section 19 of the act incorporating the city (Stats. 1875–76, p. 251); and there was no direct evidence of the publication or posting of said ordinance, as required by section 22 of that act. Plain-

tiff immediately commenced the construction of said road, and during the year 1877 completed the portion in controversy in this action, and has ever since continued to operate that portion; but on certain portions of the route named in the application and ordinance no railroad has ever been constructed or operated. In 1884 the city council undertook a revision of all the ordinances of the city then in force, and for that purpose, on July 15, 1884, passed an ordinance, numbered 59, which, among other things, contains the whole of said ordinance 16. Ordinance 59 is found duly recorded in the book of ordinances, with the certificate of the clerk required by the charter. On January 6, 1886, the council adopted a resolution directing the street commissioner to notify McDonald "to place the street railroad on the proper grade, and have the same macadamized in accordance with the ordinance." On January 19, 1886, the council adopted a resolution authorizing the city engineer to furnish plaintiff with the grade "of the railroad track on Fourth street," which is the street now in controversy. On September 14, 1886, the council adopted a resolution requiring the plaintiff "to pave the space between the rails of its road, and for two feet on each side, with bituminous blocks" of a certain kind, and to substitute flat rails for "the rails now used," and to put and keep the track flush with the street; and directing the city attorney, in case of a failure of the plaintiff to comply with said requirements, to commence an action "to have said track declared a nuisance and removed, and the right to maintain a street railroad annulled and revoked." On September 21, 1886, the council directed the city attorney at once to commence the action provided for in the previous resolution. On December 27, 1886, the city attorney commenced said action in the name of the city, and filed a complaint in which, among other things, it was alleged that the plaintiff here (defendant in that action) was organized for the purpose of building, equipping, and operating said railroad, and had built and equipped the same about June 7, 1877, and had ever since operated the same; and that, before commencing said road, it had applied for and obtained from the city permission to lay down and operate said railroad for fifty years. A demurrer was interposed to that complaint, and sustained; and on November 16, 1888, the city

attorney reported that fact to the council, and also reported that plaintiff had commenced the work of paving as required by the resolution, and was putting the road into excellent condition, and recommended the dismissal of the action. Pending that action, on May 4, 1888, the council passed a resolution granting to plaintiff the right to establish a certain switch. On March 3, 1891, the council passed a resolution declaring plaintiff's railway on Fourth street to be a nuisance, ''except that portion of said railway already in repair, flush and even with the street, and with good crossings.'' Thereupon plaintiff proceeded to and did put said track in good repair, and so as to cover the objections made. From 1877 down to the commission, in 1891, of the acts complained of in this action, the plaintiff has been in the actual, continuous, and notorious occupation of this railroad, has operated the same, and collected fares thereon, and regularly paid taxes thereon, and neither its possession nor its right to operate its road was ever disputed by anyone. On September 2, 1891, the city council passed an ordinance, numbered 132, granting to defendant the right to construct and operate a street railroad on certain streets in said city, including a portion of Fourth street, on which plaintiff's track was laid. Under authority of this ordinance defendant commenced the construction of its road, and, as a part of that work, commenced to tear up and remove plaintiff's track; whereupon this action was commenced. Defendant undertakes to justify its acts on the grounds that plaintiff never obtained any franchise whatever, or, if it did, that that franchise was forfeited by the failure of plaintiff to complete the whole of its road within the time prescribed by section 502 of the Civil Code; and that its track was therefore a public nuisance, which defendant could lawfully abate in the exercise of its own franchise. We think that under the evidence in the case plaintiff did obtain a valid franchise to construct and operate its road on Fourth street; that that franchise was never forfeited; and that plaintiff is therefore entitled to an injunction, and such damages as it has suffered by reason of the acts complained of.

1. Defendant contends that ordinance 16, the original ordinance under which plaintiff claims, was never approved by the mayor, nor published or posted as required by law, and

that it therefore never took effect. Section 22 of the city charter provides that "all ordinances shall be signed as nearly as may be in the following form: Approved this —— day of ————, ————, Mayor of the City of Santa Rosa." The ordinance in question is signed by the mayor, but without any words of approval. Section 46 requires the mayor to sign such ordinances as he approves, and there was some parol evidence tending to show that the mayor did approve this ordinance, and signed his name with that intention. We are inclined to hold that that provision of section 22 is merely directory, and that the signature of the mayor, under the circumstances of the case, is sufficient evidence of his approval; but it is not necessary to decide that question. Section 22 also provides that every ordinance "shall be published in some newspaper in Santa Rosa at least one time, or posted in three public places in said city, and shall be in force ten days after such publication or posting." Section 19 provides that the city clerk "shall keep a book marked 'City Ordinances,' into which he shall copy all city ordinances, with his certificate annexed to said copy, stating the foregoing ordinance is a true and correct copy of an ordinance of the city of Santa Rosa, and giving the number and title of said ordinance, and stating that the same has been posted or published according to law. Said record copy shall be prima facie evidence of the contents of the ordinance and of the passage and publication of the same, and shall be admissible as evidence in any court or proceeding. Nothing herein contained shall be construed to prevent the proof of the passage and publication of ordinances in the usual way." Ordinance 16 was copied by the clerk into that book, but without any certificate, nor was there any direct evidence of its publication or posting. There can be no doubt that publication in a newspaper or by posting is made by that statute a condition precedent to the taking effect of any ordinance; but it does not follow that direct proof of that fact is essential in any case. The statute expressly allows the passage and publication of ordinances to be proved "in the usual way"; that is, by such proof as would be sufficient to prove such facts in any other case. In this case the proof is overwhelming that the city, from the time of the passage of this ordinance, has always recognized its existence and validity,

has acted upon it, and, both by its action and its nonaction, has treated it as duly adopted and published. As we shall show hereafter, the defendant has no rights in this action which the city would not have, and the case is to be treated precisely as if the city, instead of the present defendant, were the party to the record. The circumstances in proof raise, after the lapse of fourteen years, a sufficient presumption of the existence of every fact necessary to the validity of the ordinance, including approval by the mayor and publication; certainly sufficient against the city and the defendant here. As was said in City of Atchison v. King, 9 Kan. 550, 556: ''The city having passed the ordinance four or five years before it was offered in evidence, and having acted upon it as valid, will not now be allowed in such an action to deny its publication. Such a rule would be a great inducement to cities to disobey the law. They get the benefits and escape the inconveniences of the law by such a course, as it would in most cases be impossible for a stranger to prove a publication four or five years after the passage of the ordinance, when the publication is by posted notices. Nor would the difficulty be much less where it was published in a newspaper, in a country where newspaper changes are as frequent as they are in this state. It was the duty of the city authorities to publish the ordinance. As they acted on it, the presumption is that it was duly published; and at least this presumption is sufficient till the contrary appears'': See, also, City of Quincy v. Chicago, B. & Q. R. Co., 92 Ill. 21. But, aside from this, ordinance 16 was re-enacted in ordinance 59, and the publication of that ordinance was proved by the statutory certificate of the clerk. The statute does not limit the time within which ordinances may be published; and the publication of the latter ordinance was a publication of the former, and therefore rendered it effective in ten days from the time of such publication. For all the purposes of this action that is sufficient. It is contended by defendant that ordinances can be validly published only by order of the city council; and that, as no such order of publication can now be found in the minutes of the council, the publication of ordinance 59 was ineffectual. But the charter does not, either in terms or by implication, require such an order, and the authorities relied on by defendant are inapplicable

(County of San Luis Obispo v. Hendricks, 71 Cal. 242, 246, 11 Pac. 682) ; and, if such an order were necessary, the certificate of the clerk is sufficient evidence that it was made. These considerations render it unnecessary to decide whether, under section 497 of the Civil Code, this privilege might not have been granted by simple resolution without any publication. Neither the city charter, nor the section of the code referred to, nor any general rule of law, requires an ordinance in such a case: Atchison Board of Education v. De Kay, 148 U. S. 591, 37 L. Ed. 573, 13 Sup. Ct. Rep. 706. Defendant relies on the use of the word ''ordinance'' in sections 498 and 502 of the Civil Code. The use of that word in those sections would hardly seem to be a sufficient reason for interpolating it into section 497; but, for the reason above stated, that question need not now be determined.

2. Defendant next contends that plaintiff, by its failure to construct its road on certain of the streets named in Ordinance 16, ipso facto forfeited its entire right of way and franchise, as well for those portions constructed as for those not constructed, and that all its rights thereby ceased and determined at the expiration of three years from the date of that ordinance. This contention is based on section 502 of the Civil Code, which reads as follows: ''Work to construct the railroad must be commenced within one year from the date of the ordinance granting the right of way and the filing of articles of incorporation, and the same must be completed within three years thereafter. A failure to comply with these provisions works a forfeiture of the right of way as well as of the franchise, unless the uncompleted portion is abandoned by the corporation with the consent of the authorities granting the right of way, such abandonment and consent to be in writing.'' It is conceded that plaintiff did not complete the work of constructing its railroad within the period prescribed, and has never completed it; but it cannot be denied that it commenced that work within one year. Under the rule laid down in Omnibus Railroad Co. v. Baldwin, 57 Cal. 160, it would seem that no forfeiture can occur unless the holder of the franchise is in default in both particulars—in failing to commence the work within one year, and in failing to complete it within three years. But, as that question has not been argued by counsel, we do not pass

upon it. Assuming, then, that a failure to complete the road within three years, though commenced in time, "works a forfeiture" within the meaning of section 502, the question to be determined is whether that statute is self-executing; that is, whether the right of way and franchise absolutely cease to exist at the end of that period, or whether a judicial or legislative declaration of forfeiture is necessary to produce that result. It is obvious that the requirement as to the completion of the work within a given time is a condition subsequent. It is a general rule that none but the grantor or his heirs can avoid a grant for failure to perform a condition subsequent; and in case of a public grant, the right to avoid it on that ground is confined to the government, and can be exercised only through the judgment of a court, or by a legislative declaration of forfeiture. It follows that, where such condition is imposed by statute, a failure to perform it will not ipso facto avoid the grant, unless so declared by the statute creating the condition. Unless the statute, by express terms or by plain implication, so declares, no forfeiture will take place without a judicial, or at least a legislative, determination to that effect: Schulenberg v. Harriman, 21 Wall. (U. S.) 44, 22 L. Ed. 551. The statute in question provides that a failure to comply with its provisions "works a forfeiture" of the right of way and franchise. This section, as shown by the note of the code commissioners, was taken from section 8 of the street railroad act of March 29, 1870 (Stats. 1869–70, p. 483), which provided that, upon such failure, "all rights of the grantee under the order or ordinance shall be forfeited and shall thenceforth cease and determine." The latter portion of the provision, according to some of the decisions in this state, evinced an intention on the part of the legislature to dispense with any further proceeding to declare a forfeiture, for the rights of the party were upon the default to "cease and determine." The omission of those words in the code, an omission which we must presume to have been deliberate and intentional, indicates an intention to mitigate the former rule. The words "work a forfeiture," which are the only words used in the code, are usually understood to mean merely that the default mentioned is a ground for forfeiture—a ground for a judicial declaration of forfeiture (People v. Hillsdale etc. Turnpike,

23 Wend. (N. Y.) 256); and they do not appear to mean more in this case. The great weight of authority without this state establishes the rule that a statutory provision that in case of default a party shall forfeit his rights, or that a thing granted shall be forfeited or shall revert to the government, or the like, merely exposes the party to proceedings for forfeiture on behalf of the state, and does not of itself devest those rights. Such a provision will not be held self-executing, unless further words are used plainly implying such a legislative intent. The cases are too numerous to be reviewed, but a few of them may be noted: In re Brooklyn El. R. Co., 125 N. Y. 434, 26 N. E. 474; Schulenberg v. Harriman, 21 Wall. (U. S.) 44, 22 L. Ed. 551; In re Kings County El. Ry. Co., 105 N. Y. 97, 119, 13 N. E. 18; Chesapeake & O. Canal Co. v. Ohio R. Co., 4 Gill & J. (Md.) 1, 121; Briggs v. Cape Cod Co., 137 Mass. 71; Wallamet Falls C. & L. Co. v. Kittridge; 5 Saw. 44, Fed. Cas. No. 17,105; Frost v. Coal Co., 24 How. 283, 16 L. Ed. 637; Railroad Co. v. Johnson, 49 Mich. 148, 13 N. W. 492. In this state the cases are not altogether consistent with each other, nor in harmony with the decisions elsewhere. In Borland v. Lewis, 43 Cal. 569, the words construed were: "Such neglect or failure shall work a forfeiture of such lands, and the same shall be resold as if no purchase had been made." This statute was held self-executing, on the ground that the last clause would be useless if the resale could not be made until the forfeiture had been pronounced by a court. In Oakland R. Co. v. Oakland, B. & F. V. R. Co., 45 Cal. 365, 13 Am. Rep. 181, the words, "the franchises and privileges herein granted shall utterly cease and be forfeited," were held to accomplish the forfeiture without the necessity of judicial proceedings. In Upham v. Hosking, 62 Cal. 250, the same ruling was made as to the words, "the rights granted by this act shall become forfeited to the state." This was decided upon the supposed authority of the two preceding cases, and without any further reason stated. Those cases were clearly not authority for that ruling, for in each of them the decision was rested on language beyond the words of forfeiture— "shall be resold as if no purchase had been made"; "shall utterly cease." In People v. Railway Co., 91 Cal. 338, 27 Pac. 673, it was remarked that acts sufficient to cause a for-

feiture do not per se produce a forfeiture, without proper proceedings in a proper court. In Town of Arcata v. Arcata & M. R. R. Co., 92 Cal. 639, 28 Pac. 678, it was said: "Where the statute provides that a failure to complete the contemplated work within a certain time shall work a forfeiture, no action is necessary to enforce the forfeiture. In such a case, upon the happening of the event of the commission of the offense which is the statutory basis of forfeiture, the title to the thing forfeited immediately vests in the state." It was, however, expressly held that that question did not arise in the case, and the language quoted must therefore be considered obiter dictum.

We think that the true rule on this subject is that laid down in the cases cited above from other courts, and that the case of Upham v. Hosking and the dictum in the Town of Arcata case cannot be supported upon principle. If this statute ex proprio vigore produces a forfeiture without further legislative or judicial action, it does so absolutely and unconditionally. If the grantee of the franchise should commence the work within the year, and thereafter diligently prosecute it, and should, within the three years, complete it with the exception of a single block, its entire road would be forfeited, even though its failure to complete that block should be caused by the occupation of the city by hostile troops, or by a destructive pestilence, or any other cause entirely beyond its control. If, on the very next day after the expiration of the three years, it should complete its road, and thereafter operate it for ten years, it might then be ousted without redress. It might happen that such a road, in a small place, could be operated for many years only at a loss; yet the moment it became profitable a rival might step in and avail itself of a forfeiture occurring many years before, and never thought of by anyone. The injustice that might be done in such cases would be avoided, and private as well as public rights protected, if resort must be had to legal proceedings. It is therefore reasonable to suppose that the legislature in general intends that a forfeiture shall be enforced only by judicial action, or, in a proper case, by express legislative declaration; and that, when it intends otherwise, it will use apt and plain language to that effect. The language used in the section under consideration evinces no such intention; and,

until a judgment of forfeiture is obtained or the forfeiture is declared by legislative authority, the franchise and right of way continue to exist. It is not necessary, for the purposes of this case, to decide whether, in a case like the present, a mere legislative declaration of forfeiture would be sufficient. The authorities do not agree as to when, if ever, a forfeiture can be enforced in that way. It is sufficient to say that in this case no such legislative declaration was ever made by the city council or any other body. It is well settled that a mere grant to a third party will not, of itself, effect the forfeiture; and the ordinance granting the franchise to defendant expresses no such intention, and is not in any way inconsistent with the continuance of plaintiff's franchise.

From the principles above laid down, it follows that no one but the government can avail itself of a ground of forfeiture of a public grant; and that the government being the sole judge of the propriety of such action, may waive the right to enforce or declare a forfeiture. Such waiver may be by express legislative action, or may be inferred from other acts· of the governmental authority. Accordingly, when the state, or any subordinate governmental body to whose charge the matter has been committed, after knowledge of the act or omission constituting a ground of forfeiture, does any act which unequivocally recognizes the franchise as still existing and in force, a waiver of the forfeiture will be inferred. And if such act of recognition has the effect of causing the holder of the franchise to incur expense which he would not have incurred had the forfeiture been insisted on, or otherwise to change his position, the inference of a waiver becomes conclusive, on the ground of estoppel. These propositions are supported by an overwhelming weight of authority; indeed, no case to the contrary has been brought to our attention: New Orleans, C. & L. R. Co. v. City of New Orleans, 44 La. Ann. 748, 11 South. 77; Chicago, R. I. & P. R. Co. v. City of Joliet, 79 Ill. 25, 37; City of Atlanta v. Gate City Gaslight Co., 71 Ga. 106, 125; State v. Fourth N. H. Turnpike, 15 N. H. 162, 41 Am. Dec. 690; Martel v. East St. Louis, 94 Ill. 67; Trustees of McIntire Poor School v. Zanesville C. & M. Co., 9 Ohio, 203, 290, 34 Am. Dec. 436; State v. Mississippi, O. & R. R. Co., 20 Ark. 495; In re New York El. R. Co., 70 N. Y. 338; State v. Taylor, 28 La. Ann. 460. In the present

case the acts of recognition by the city council of the continued existence of plaintiff's franchise have been numerous and unequivocal. For fourteen years, of which at least eleven years were after the alleged ground of forfeiture had occurred, the city in every possible way, by direct dealing with plaintiff, by its public resolutions, orders and ordinances, and by its pleadings in a judicial proceeding, recognized plaintiff's franchise as valid and in force, and insisted upon and took steps to enforce the obligations assumed by plaintiff by its acceptance of that franchise. In consequence of those official acts, plaintiff incurred expense in paving the public street, in paying taxes, and in other ways, which it would certainly not have incurred had the alleged forfeiture been insisted upon. As the fact that plaintiff had not constructed its railway on certain streets was necessarily one of public notoriety, it must be presumed that the city council had knowledge of it; and its acts, in view of that knowledge, conclusively import a waiver of the right to insist upon a forfeiture, and estop the city from ever claiming that a forfeiture has occurred. As the city is by law the agent of the public for this purpose, this estoppel extends to the whole public, and binds the defendant and all other persons: People v. Holladay, 93 Cal. 241, 27 Am. St. Rep. 186, 29 Pac. 54. It is therefore clear that the failure of plaintiff to complete its road afforded no justification to defendant for any interference with plaintiff's track. Whether, in any case, a private individual or corporation has the right to remove from a public highway a railroad track in actual use therein, though laid without authority, where such track does not amount to a complete obstruction of the highway, we need not decide; but see Market St. Ry. Co. v. Central Ry. Co., 51 Cal. 583.

3. Defendant contends that no assignment having been proved from McDonald and Meyers to plaintiff, plaintiff cannot maintain this action. But as McDonald and Meyers were two of the original incorporators of plaintiff, and as plaintiff was incorporated for the express purpose of building and operating this railroad, no assignment was necessary. Besides, the acts of the city council referred to recognize plaintiff as the owner of the franchise, and estop the city and the defendant from claiming the contrary. Moreover, as against

defendant, which is a mere trespasser, plaintiff's actual possession is sufficient.

4. The acts of defendant, complained of in this action, would amount to a complete destruction of plaintiff's property, and a permanent obstruction to its right of way. As they were committed under a claim of right, injunction is the proper remedy (Moore v. Waterworks, 68 Cal. 146, 8 Pac. 816); and plaintiff may also, in this action, recover its actual damages.

5. On the trial plaintiff offered in evidence an ordinance of the city, duly passed July 10, 1889, and numbered 110, granting to plaintiff the right to construct on Fourth street a switch, to be ''connected with the main track of the Santa Rosa Street Railroad, now laid and constructed on said Fourth street.'' In that ordinance it was provided that the term of the franchise thereby granted should ''extend until the expiration of the term of the franchise for laying, etc., the main track of the Santa Rosa Street Railroad.'' This ordinance was excluded by the court on defendant's objection that it was ''irrelevant, immaterial and incompetent.'' From what has been said above, it follows that this ruling of the court was error. The ordinance contained an unequivocal recognition of plaintiff's franchise, and therefore tended to show both the original existence of the franchise and a waiver of the alleged forfeiture.

6. The court did not err in admitting the testimony of the city clerk, Jordan, to the effect that, after search, he had been unable to find among the city records any order for the publication of Ordinances 16 and 59. That is a well-recognized method, and often the only available method, of proving the loss or nonexistence of a record. This testimony was, however, unimportant for the reasons before stated. The findings and conclusions of the court below are in conflict with the views herein expressed; and the judgment and order appealed from are therefore reversed, and the cause remanded for a new trial.

We concur: McFarland, J.; Fitzgerald, J.

GAROUTTE, J.—I concur in the judgment, and also concur in the conclusions arrived at by Mr. Justice Van Fleet

upon the first and second propositions discussed by him. But, by reason of the conclusions there reached, I think the matter of an estoppel as against the city becomes immaterial, and therefore the city should not be foreclosed from litigating that question in the future by some proper action, if it deem such course advisable.

DE HAVEN and HARRISON, JJ.—We dissent from the judgment. The failure of the plaintiff to complete the whole of its road, for the construction of which its franchise was granted, within the time prescribed by section 502 of the Civil Code, worked a forfeiture of the franchise; and the subsequent action of the city of Santa Rosa in granting to defendant the right to construct and operate its road over a portion of the same streets named in plaintiff's forfeited franchise gave to defendant the right to enforce and insist upon such forfeiture in this action.