PACIFIC MUT. INS. CO. v. The BELLE. See Case No. 1,269.

PACIFIC MUT. INS. CO. (SIMPSON v.). See Case No. 12,886.

PACIFIC RAILROAD (OPDYKE v.). See Case No. 10,546.

PACIFIC RAILROAD (UNITED STATES v.). See Cases Nos. 15,983 and 15,984.

PACIFIC R. CO. (BAILEY v.). See Case No. 742.

———

## Case No. 10,649.

### PACIFIC RAILROAD CO. v. LEAVEN-WORTH.

[1 Dill. 393; [1] 3 Chi. Leg. News, 306; 5 West. Jur. 306.]

Circuit Court, D. Kansas. 1871.

MUNICIPAL CONTROL OVER STREETS — RIGHTS AND REMEDIES.

1. Under the statutes of Kansas, a railroad company is forbidden to construct and operate its roads upon the streets of an incorporated city "without the assent of the corporate authorities."

2. Under this statute, the city authorities are not limited to a simple granting or denial of the right of way, but they may prescribe conditions on which they will give their assent, and if these are lawful and proper and are accepted by the railroad company, they are binding upon the parties.
> [Cited in Union Pac. R. Co. v. Merrick County, Case No. 14,383.]
> [Cited in brief in Frankford & S. P. C. P. Ry. Co. v. Philadelphia (Pa. Sup.) 4 Atl. 551. Cited in State v. Mayor, etc., of Bayonne, 55 N. J. Law, 241, 26 Atl. 81; Omnibus R. Co. v. Baldwin, 57 Cal. 167; Union Depot R. Co. v. Southern Ry. Co., 105 Mo. 571, 16 S. W. 922; Moundsville v. Ohio R. R. Co., 37 W. Va. 107, 16 S. E. 519.]

3. Accordingly, where the right of way along a street was granted by a city, on condition that the company should build a depot in a certain part of the city and grade, rip-rap, and pave the street it used, and the company agreed to accept

———

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

it on these terms, it was held that it could not hold and enjoy the grant, and not comply with the conditions on which it was made.
> [Cited in Omnibus R. Co. v. Baldwin, 57 Cal. 165; Moundsville v. Ohio R. R. Co., 37 W. Va. 107, 16 S. E. 519.]

4. An ordinance and contract, special in their terms, construed to give the city a right to enter and take possession of the street, and remove the railroad track on the failure of the company to comply with the conditions of the ordinance granting to it the right of way.

5. The principles, which will, in such cases, govern the chancellor in granting or denying a temporary injunction against the city, to restrain it from taking possession of the street, and removing the rails, and preventing the running of the trains of the company, considered.

On motion for an injunction. The complainant, the Pacific Railroad Company (of Missouri) is a corporation chartered by the state of Missouri, and it built and is operating a road from St. Louis to the Kansas state line. By virtue of its charter, it leased the road of the Missouri River Railroad Company, extending from the state line of Kansas to the city of Leavenworth, and it likewise leased on the 28th day of September, 1870, the road of the Leavenworth, Atchison, & Northwestern Railroad Company, extending from Leavenworth to Atchison, in Kansas. Substantially, the present controversy is between the complainant (the Pacific Railroad Company of Missouri) and the city of Leavenworth, and relates to the rights of the parties under the ordinances and contracts hereinafter mentioned. By the statutes of Kansas, it is provided that the assent of the corporate authorities of cities is necessary before a railroad company is authorized to lay down its track and operate its road in the streets of a city. Gen. St. Kan. 202. With this statute in force, the city of Leavenworth, on the 13th day of January, 1869, passed an ordinance granting the right of way to the said Leavenworth, Atchison, & Northwestern Railroad Company through the city upon the public streets, or ways thereof (along Water street and the levee), "upon the condition and restrictions" in the ordinance set forth. Among these conditions, one was, that the said railroad company should construct and maintain, between certain streets named, and within a specified time (one year), "all of the freight and passenger depots used and required for the transaction of the business of said company in said city." The character of the buildings thus to be erected is particularly described. Among these conditions, also, was one that the "railroad company shall, within one year, under the direction of the city engineer, grade, rip-rap, and pave the levee, and that the said levee shall be so completed as to form a uniform and straight line from, &c., to, &c., and provided, further, that where it is necessary to remove the present rock levee for the purpose of laying their track, the company shall repave the same in as good condition as before they removed it."

The ordinance provides that it shall not

take effect so as to confer the right of way until a contract is executed between the company and city, binding the former to keep and observe the requirements of the ordinance; which contract, it may be mentioned, was subsequently duly entered into and signed by the respective parties. The ordinance contains this provision as to the rights of the city, in case the company fails to comply with its agreement, to wit: "Provided, that if the said railroad company shall fail to perform either of the above specifications and agreements, the right of way hereby granted shall cease, and the city of Leavenworth shall have the right to re-enter and take possession of all the public grounds of the city over which the said company shall have constructed its road by virtue of this grant."

Subsequently, the city twice extended the time for completing the work required of the company, but reserving otherwise all of its rights. It is admitted that the extended time has expired, and that the company has not yet erected any depot buildings, nor commenced their erection; nor has the company finished the work on the levee required to be done by the ordinance and contract; but it is alleged and shown that it entered upon its performance and has expended therein about thirty thousand dollars. In the lease of the Leavenworth, Atchison, & Northwestern Railroad to the complainant, no reference is made to the ordinance and contract with the city of Leavenworth, nor is there any assumption by the complainant of the duties and obligations of the lessee in the premises.

After the passage of the original ordinance, and the making of the contract in conformity therewith, the company laid down its track on Water street as authorized by the ordinance, and continued to use the same until its road was leased to the complainant, and after that the complainant continued to use the same until forcibly prevented by the city, on or about December 30, 1870.

On the 23d day of December, 1870, the city council of Leavenworth passed an ordinance reciting the former ordinance of January 13, 1869, granting the right of way to the Leavenworth, Atchison, & Northwestern Railroad Company on certain terms, and the failure of the company to comply therewith, and enacting that the city elects to consider all of said contracts rescinded and at an end, and declares the right of way therein granted to have ceased, and that the city elects to re-enter and resume possession of all the public grounds over which the road of the company is constructed. The marshal of the city is ordered to re-enter and take possession accordingly, and notify the company thereof. The city marshal, by resolution of the council passed December 30, 1870, was instructed "to maintain the rights of the city at all hazards, and with such force as may be necessary, and that if the railroad company, or any person shall run, or move, or offer to run or move any car or engine on or over the said

levee, Water street, or public grounds of the city, to remove so much of the railroad track as may be necessary to prevent it." These orders the marshal obeyed, and took possession of the said grounds, and removed portions of the track, and by reason of such possession, forcibly taken and held, prevents the complainant from operating said road through the city, and no trains have run through the city, or to Atchison since that time. The bill sets forth the above facts, and that the damage thereby caused is irreparable, stating the facts showing it to be so.

The bill alleges no excuse for the company's failure to perform the agreements respecting the depot buildings, and levee, except that it charges that the city had no lawful power to require the company to erect depot buildings, and the company had no lawful power to agree to grade, rip-rap, and pave the levee. The bill makes the said Leavenworth, Atchison, & Northwestern Railroad Company, as well as the city of Leavenworth, defendants, and prays for an injunction to prevent the city, or its officers, from interfering with the use of the railroad track through the city by the complainant, and for general relief.

On the bill and exhibits and certain affidavits, the complainants moved the circuit judge, at his chambers, on the 9th day of January, 1871, for the allowance of a temporary injunction; and it was upon this motion that the subjoined opinion was given.

Crozier, Stillings, Hurd & Fenlon, for complainants.

McCahon & Moore, for the city.

DILLON, Circuit Judge. This is an application by the Pacific Railroad of Missouri for a temporary injunction against the city of Leavenworth to prevent it from interfering with the complainant's use within the city, of the track of the Leavenworth, Atchison, & Northwestern Railroad Company, of which latter company the complainant is the lessee.

The legal rights of the complainant to the use of the streets of the city, are wholly derived from the Leavenworth, Atchison & Northwestern Railroad Company, and can mount no higher than their source. The rights are derived from the ordinances and contracts referred to in the statement of the case.

By a statute of the state of Kansas it is enacted that "every railway corporation may construct its road across, along, or upon * * * any street, highway, &c., but the company shall restore the same to its former state, &c. Nothing herein contained shall be construed to authorize the construction of any railroad not already located, in, upon, or across any street in any city incorporate, or town, without the assent of the corporate authorities of such city." Gen. St. Kan. 1868, p. 202, tit. "Corporation," § 47. This statute went into effect November 1, 1868, before the location of the Leavenworth, Atchison, &

Northwestern Railroad, and it was in force at the time when the ordinance of January 13, 1869, was enacted, and remains unrepealed. The city of Leavenworth is incorporated as a city of the first class. It is unnecessary to inquire what would be the respective rights of the railroad company, and of the city, if this statute were not in force, or did not apply to them.

The power of the legislature over private corporations (section 1, art. 12, Const. Kan.) and over all public or municipal corporations, and over the uses to which public streets and highways may be devoted, is such that it cannot be doubted that it was entirely competent for it to enact that the company should not construct its road in the streets of an incorporated city, without the assent of its authorities. City of Clinton v. Cedar Rapids & M. R. Co., 24 Iowa, 455; People v. Kerr, 27 N. Y. 188; Com. v. Erie R. Co., 27 Pa. St. 339, 354; Moses v. Pittsburgh, Ft. W. & C. R. Co., 21 Ill. 516; Springfield v. Connecticut R. R., 4 Cush. 63.

The legislature of Kansas did so enact in the words above quoted; and under that statute no railroad company could construct its road upon the streets of Leavenworth "without the assent of the corporate authorities thereof." It has been argued in behalf of the complainant that this statute simply clothes the city with the power to say "yea" or "nay," but that it does not authorize it to stipulate for terms or conditions. But in this view I cannot concur. Its power is complete; and it was undoubtedly the design of the legislature that the city authorities, as the representatives and guardians of the public interests of the city and its inhabitants, should have the power to prescribe, as conditions of giving their assent, such lawful and proper terms as they deemed expedient. In point, see Northern Cent. R. Co. v. City of Baltimore, 21 Md. 93.

In the exercise of this authority the city said to the company, you may construct your road along Water street upon, inter alia, two conditions: 1. You shall, within a given time, build depot buildings, of a given character, and at a specified place. 2. You shall also grade, rip-rap, and pave the levee (which is part of Water street, and on and along which the right of way is granted). To this the company agreed, not only by accepting of the grant of the right of way on these conditions, but by executing a contract to this effect.

It is now insisted by the company that the city has no lawful power to contract for the erection of depot buildings, and hence so much of the ordinance and contract as relates to this subject is in excess of its authority, and void. My opinion is otherwise: and it is strengthened by an examination of the extensive powers with which it has been the policy of Kansas to clothe its municipal corporations. Gen. St. Kan. 1868, c. 18, art. 1, p. 129; Id. p. 163, pl. 25. It is also objected by the complainant that the railroad company had no authority to agree to grade, rip-rap, and pave the streets of a city, and that its agreement to do so in this instance, is ultra vires and void. 39 Eng. Law & Eq. 28, 37; 30 Eng. Law & Eq. 120. In the case now before me, the work which the company agreed to do in consideration of the right of way granted, seems to be upon or connected with the street occupied, and there is nothing in the record to show that more was required of the company than was reasonable under the circumstances, and nothing to show that the company would not be benefited as well as the city, by the making of the required improvements. If the use of a street by a company by reason of the grade adopted, or other peculiarities of situation, would cause an expenditure of money by the city to put the street in repair or fit it for use, it would seem to be competent for the city to make the grant of the right of way conditioned on the payment of so much money. If so, may it not require, as the condition of giving its assent, that work of such a character and to such an amount shall be done upon the street, and if the company agree to do this, and accept the grant accordingly, may it keep and enjoy the grant and be heard to say that its agreements, in consideration thereof, are ultra vires? I think not.

For the purposes of this application, the ordinance of January 13, 1869, and the contract executed in pursuance thereof, must be taken to be binding upon the parties. Confessedly, this contract has not been performed by the company. It has not performed, nor even entered upon the performance of the agreement to erect depot buildings. It has only performed, in part, its agreement in respect to the street. The bill as now framed, sets forth no excuse for the non-performance, and does not aver a readiness or even an intention hereafter to perform the contract. On the contrary, the complainant says that as between it and its lessor it is the duty of the latter to perform this contract and to maintain it in the possession and use of the road; but with this dispute, the city has, as I conceive, no concern. The company, then, not having kept the contract with the city, and setting forth no equitable excuse for the failure, was the city authorized to take possession of the street, and prevent the further use of it by the company? Upon this point my opinion is with the city. This opinion rests upon a construction of the ordinance which granted the right of way. It seems to have been very carefully drawn. It is impossible to read the ordinance and its various amendments, without perceiving that the city feared, or at least contemplated, a failure on the part of the company to keep its engagements, and in that event provided a remedy, to which the company agreed. This was that "the right of way hereby granted shall cease, and the city shall have the right to re-enter and take possession," &c. In re-en-

tering and taking possession the city has done nothing but that which the company agreed it might do in the contingency of a failure to perform its agreement.

Whether the things to be performed by the company are conditions subsequent, as claimed by the city, or mere covenants, as contended by the company, it is not perhaps material, on this application, to decide. This depends upon the intention. 4 Kent, Comm. 135, 136. And although courts incline against conditions, they will or should carry out the intention of the parties; and my opinion is that the parties here intended that the city should have the right to take possession on the failure of the company to keep its contract.

It has been strenuously maintained by the counsel for the city that its marshal having removed the track of the company and taken possession of the street, the injury complained of is consummated—a fait accompli—and that it is not the province of an injunction to command a party to undo what is already done. Wangelin v. Goe, 50 Ill. 459, and authorities cited and reviewed. But this is a different case from the one cited, and depends upon different principles. I refuse the injunction not on this ground, but on the ground that the company is in default and the city is only pursuing a remedy which is given to it by the contract of the parties.

But were the city in the wrong and the company not, and the former had, without right, interfered with the operation of a long and important line of railroad, causing a break as shown of about three miles, which has resulted in stopping the operation of the road to the north, there can be no doubt but that it would be a case where nothing but an injunction would be adequate to protect the rights of the company, and those of the public. The injunction would not issue to command the city to restore the rails it had removed, but to restrain it and its servants from further interference with the company in the use of the right of way granted to it by the city. Upon the case made, the injunction asked must be denied. Injunction denied.

Subsequently, upon representations that the complainant would adapt its bill to the views above expressed; that it was suffering irreparable damage by the break in its line, and the public great inconvenience; that the use of the street by the company pending the litigation would occasion no considerable, if any actual, injury to the city, or inconvenience to its inhabitants; that it was willing to give the most ample security to the city to abide the result of the suit, &c., the following order, in substance, was made as expressing the conditions on which a temporary injunction would be allowed. This order proceeds it will be observed upon the idea that the contract is binding, but that a court of equity, in view of part performance by the company, the fact that the complainant was an

assignee and not in actual default, and of the public interests involved, would or might have the right to relieve against the forfeiture, the city seemed to be enforcing. It was stated by counsel for the city that its purpose was not to stop the operating of the road through the city, but to compel the company to comply with its contract.

Ordered, that if the complainant will amend its bill so as to admit the obligation to comply with the ordinance and contract, and will give security in the sum of $50,000 that it or its lessor will at once enter upon the work of erecting the depot buildings and completing the work on the levee and street with reasonable despatch, and abide all the orders and the final decree of the court, that an injunction will be allowed to restrain the city, until further order, from all interference with the complainant in the use of the right of way granted by the ordinance [of the city, and the right is reserved to the city to move to dissolve it because this order is not complied with.][2] Ordered accordingly.

NOTE. The legislature has the power to authorize the building of a railroad on a street or highway, and may directly exercise this power or devolve it upon the local or municipal authorities. Mercer v. Pittsburgh, Ft. W. & C. R. Co., 36 Pa. St. 99; Moses v. Pittsburgh, Ft. W. & C. R. Co., 21 Ill. 516; Murphy v. Chicago, 29 Ill. 279; New Orleans & C. R. Co. v. Second Municipality of New Orleans, 1 La. Ann. 128, 9 La. Ann. 284; Geiger v. Filor, 8 Fla. 325; Springfield v. Connecticut River R. Co., 4 Cush. 63; Tate v. Ohio & M. R. Co., 7 Ind. 479. See New Albany & S. R. Co. v. O'Daily, 13 Ind. 353, 12 Ind. 551; People v. Kerr, 27 N. Y. 188; City of Clinton v. Cedar Rapids & M. R. Co., 24 Iowa, 455; Lackland v. North Missouri R. Co., 31 Mo. 180. But where the public have only an easement in the street or highway, it has been often, but not always, held that against the proprietor of the soil the use of the street or highway for the purposes of a railroad is an additional burden or servitude, of which, under the constitution, he cannot be deprived without compensation. Mahon v. New York Cent. & H. R. R. Co., 24 N. Y. 658; Carpenter v. Oswego & S. R. Co., 24 N. Y. 655; Gray v. St. Paul & P. R. Co., 13 Minn. 315 (Gil. 289); Williams v. Natural Bridge Plankroad Co., 21 Mo. 580; Ford v. Chicago & N. W. R. Co., 14 Wis. 616. And this, says Judge Cooley, appears to be the weight of judicial authority. Const. Lim. 549. A different rule has been applied where the fee of street is in the city corporation and not in the adjoining owner. See Lexington & O. R. Co. v. Applegate, 8 Dana, 289; Williams v. New York Cent. & H. R. R. Co., 16 N. Y. 97, obiter; Wager v. Troy Union R. Co., 25 N. Y. 526; note observations p. 533; City of Clinton v. Cedar Rapids & M. R. Co., supra; People v. Kerr, supra; Protzman v. Indianapolis & C. R. Co., 9 Ind. 467; 13 Ind. 353, supra; Moses v. Pittsburgh, Ft. W. & C. R. Co., 21 Ill. 522. See Cooley, Const. Lim. 555, 556, and notes. In the absence of special restriction there is much to recommend the doctrine of the plenary power of the legislature over all streets and highways and public places, and their uses, which is asserted in the Pennsylvania cases, the leading one of which is the Case of Philadelphia & T. R. Co., 6 Whart. 25; affirmed, 27 Pa. St. 339, 354; criticised, Williams v. New York Cent. & H. R. R. Co., 16 N. Y. 97, 106. See,

2 [5 West. Jur. 314.]

also, O'Connor v. Pittsburgh, 18 Pa. St. 187, 189; Com. v. Passmore, 1 Serg. & R. 217; approved, Chicago v. Robbins, 2 Black (67 U. S.) 423. Remedy by injunction by and against city corporation. City of Clinton v. Cedar Rapids & M. R. Co., 24 Iowa, 455, 482. note; Northern Cent. R. Co. v. City of Baltimore, 21 Md. 93; Morris, &c., R. Co. v. City of Newark, 2 Stockt. [10 N. J. Eq.] 352.

PACIFIC R. CO. (KETCHUM v.). See Cases Nos. 7,738–7,740.

PACIFIC R. CO. (PAUL v.). See Case No. 10,845.

PACK (EVANS v.). See Case No. 4,566.

PACKAGE OF LACE (UNITED STATES v.). See Case No. 15,985.

PACKAGE OF WOOL (UNITED STATES v.). See Case No. 15,986.

## PACKAGES OF.

[Note. Cases cited under this title will be found arranged in alphabetical order under the quantity or number of packages.]