[No. 7,405.—In Bank.]

## OMNIBUS RAILROAD COMPANY *v.* A. R. BALDWIN ET AL.

Street Railroads—Constitutional Law — Injunction.—Under the old as well as the new Constitution, a law of a general nature must have a uniform operation; and therefore an act exempting particular cases from the operation of a general law is unconstitutional. *Held,* accordingly, in an action by the plaintiff to enjoin the defendants from removing the plaintiff's track, the former claiming under the 17th section of the Act of April 1st, 1874, authorizing them to construct a street railway on Montgomery avenue, and the latter under a grant of right of way by the Board of Supervisors, that the section of the act referred to was unconstitutional, being an attempt to exempt the corporation named from the operation of the general law of March 29th, 1870, and therefore destructive of its uniform operation.

Id.—Franchise—Ordinance.—The defendants were granted a right of way for a street railroad over a portion of Montgomery avenue in San Francisco, and the plaintiff was granted a similar right of way for more than five blocks over the same portion of the street. *Held,* that, under the provisions of § 499 of the Civil Code, the grant to the plaintiff was void.

Id.—Forfeiture—Construction of Statute.—Section 502 of the Civil Code does not declare that a failure to comply with the provision which requires work to be commenced within one year shall work a forfeiture; but that a failure to comply with that, and also with the provision which requires the work to be completed within three years, shall have such effect.

Id.—Constitutional Law — Case Explained.—McKinstry, J., concurring, was of the opinion, that the Act of April 1st, 1872, was violative of § 31, article iv, of the old Constitution, as judicially construed in cases of *San*

*Francisco* v. *Spring Valley Water W. Co.* 48 Cal. 493, and *Waterloo Turnpike Co.* v. *Cole,* 51 id. 381, and therefore, under the settled law of this State, void.

ID.—ID.—ID.—ROSS, J., dissenting, was of the opinion, that the provisions of § 502 of the Civil Code required that the work therein referred to should be commenced in good faith within one year from the date of the ordinance granting the right of way, and should be prosecuted with due diligence to completion within three years. That the defendant had failed to comply with the first of these conditions, and that his franchise was therefore forfeited.

ID.—ID.—THORNTON, J., dissenting, was of the opinion, that, conceding the 17th section of the Act of 1872 to be void, nevertheless the track of the plaintiffs was rightly in place.

APPEAL from an order refusing to grant an injunction, in the Superior Court of the City and County of San Francisco. SULLIVAN, J.

The action was brought to obtain an injunction restraining the defendants from interfering with the railroad track of the plaintiff upon Montgomery avenue, in the city and county of San Francisco. Before the trial, the plaintiff applied for a preliminary injunction, and an order was made denying its motion in that behalf. The plaintiff appealed from the order.

After the decision, the appellant filed its petition that the appeal be reheard in bank, and the application was denied.

*Lloyd, Newlands & Wood,* for Appellant.

The Act of April 1st, 1872, is not in violation of § 31 of article iv of the former Constitution. It confers no corporate power. It simply grants a right of way. The cases of *Spring Valley Water Works* v. *San Francisco,* 48 Cal. 529, and *Waterloo Turnpike Co.* v. *Cole,* 51 id. 581, do not apply. The acts of the Legislature under consideration in both these cases were vicious, in that they gave particular corporations additional corporate powers and privileges. In the latter case, the franchise granted was not a mere right of way, but was a right to collect tolls—one of the sovereign powers. (*Southern Pacific R. R. Co.* v. *Orton,* United States Circuit Court of California, decision rendered December, 1879; *Wallace* v. *Loomis,* 7 Otto, 154.)

It will be observed, that the Ensign Act was a grant to En-

sign and his associates and assigns, or to such corporations as they should thereafter form. The franchise of the defendants is similar in nature. It is a grant to Baldwin et al., or to such corporations as may be incorporated and organized by them.

The Spring Valley decision was not made until 1874. The grant to the Omnibus Railroad Company was made in 1872. At that time, the construction of the constitutional provisions in question was settled under the decision in *Cal. State Tel. Co.* v. *Alta Tel. Co.* 22 Cal. 398. It was there held, that the Legislature might confer upon existing corporations by special act a direct grant of special privileges and franchises. The Omnibus Railroad Company entered on the construction of this road in pursuance of the terms of the Act of 1872; that act became a contract between the company and the State. The rule is, that if a contract, when made, was valid by the law of the State as then expounded in its courts of justice, its validity and obligation cannot be impaired by any subsequent decisions of its courts altering the construction of the law. (*S. P. R. R. Co.* v. *Orton*, 1 Wall. 206.)

The question of the usurpation of a franchise can only be inquired into by the State. This is an attempt on part of respondent to inquire into such a question at the suit of a private party. (*Market St. R. R. Co.* v. *Central R. R. Co.* 51 Cal. 586.)

The right of way of plaintiff over Montgomery avenue is its property, and cannot be taken away without exercising the right of eminent domain. Section 17 of the Act of 1871–72 is a contract; no right of repeal is reserved.

The Presidio franchise is void, because of want of power in the municipality.

The power is delegated to the municipality to grant rights of way over its streets, but that power is limited. " In no case must two railroads occupy and use the same street or track for the distance of more than five blocks." (§ 499, Civ. Code.)

In addition to this, § 499 clearly implies that no more than two corporations shall be permitted to use the same street for any distance. It appears that the Omnibus Company and the North Beach Company are actually occupying Montgomery

avenue for the distance of more than one hundred feet, from the .intersection of Kearny street with Montgomery avenue to Pacific street.   Therefore, the municipality could not grant a third corporation the right to use the same portion of Montgomery avenue.   (Civ. Code, § 499; *People* v. *Rich*, 54 Cal. 74.)

Work was not commenced upon the Presidio franchise within one year.

The Presidio franchise has therefore been forfeited by the statute; for § 502 of the Civil Code declares a forfeiture.   There is no need, therefore, of a judicial forfeiture, and the forfeiture can be taken advantage of in this case.   As to the distinction between judicial and statutory forfeiture: *Oakland R. R. Co.* v. *Oakland, Brooklyn, & F. V. R. R. Co.* 45 Cal. 365.

The question as to whether the Omnibus Company has complied with the conditions of § 17 of the Act of 1872, cannot be raised in this case, for that statute does not declare a forfeiture.

*Jarboe & Harrison*, for Respondents.

The plaintiff acquired no rights by virtue of the Act of the Legislature of April 1st, 1872.   (*Spring Valley W. W.* v. *City of S. F.* 48 Cal. 529; *Waterloo Turnpike Co.* v. *Cole*, 51 id. 381.)

The plaintiff acquired no rights paramount to those of the defendants, by virtue of the grant from the city and county of San Francisco.   The grant to the defendants, having been made October 9th, 1878, is prior in right as well as in time to that made to the plaintiff November 28th, 1879.

The defendants had the right, by virtue of the franchise granted to them by the city and county of San Francisco, to do the acts complained of by the plaintiff.   (Civ. Code, § 497.)

Every grant of a franchise carries with it all incidental rights necessary to its enjoyment.   (*Commonwealth* v. *Temple*, 14 Gray, 77; *Fall River Co.* v. *Old Colony Co.* 5 Allen, 228; *Springfield* v. *Conn. River R. R.* 4 Cush. 72.)

The municipal authorities are empowered, under the grant from the Legislature, to determine the public uses to which a street is to be subjected, and all individual property is held sub-

ject to such determination. (Dill. on Mun. Corp. § 538; *Carson* v. *Central R. R. Co.* 35 Cal. 325; *People* v. *Kerr*, 27 N. Y. 203.)

All property affected with a public use is held subject to the determination of the government how it shall be used. (*Munn* v. *Illinois*, 4 Otto, 113.)

The plaintiff cannot question the rights acquired by the defendants under the grant from the city. (*Brooklyn City R. R.* v. *Coney I. R. R.* 35 Barb. 371; *Market St. R. R.* v. *Central R. R.* 51 Cal. 583.)

The accommodation of the public, and not profit to the grantee, is the principle upon which the franchise of a street railway is granted. (*Commonw.* v. *Temple*, 14 Gray, 77; *In re Kerr*, 42 Barb. 121; *Metropolitan R. R.* v. *Highland R. R.* 118 Mass. 293.)

The granting or dissolving of an injunction rests in the discretion of the Court, and unless there is shown to have been an abuse of such discretion, this Court will not reverse an order refusing to grant a preliminary injunction. (*Rogers* v. *Tennant*, 45 Cal. 184; *Kohler* v. *Los Angeles*, 39 id. 510.)

SHARPSTEIN, J.:

If we do not mistake the theory of the plaintiff's counsel, it is that the plaintiff obtained the right to lay its tracks upon Montgomery avenue before the defendants obtained a similar right, and that, *qui prior est tempore, potior est jure.*

If the rule which is invoked on behalf of the plaintiff can be made applicable to this case, it certainly devolves upon the plaintiff to bring its case within the rule; i. e., to show that it acquired its right before the defendants did theirs. And if the seventeenth section of the Act of April 1st, 1872, be constitutional, there can be no doubt as to the priority of the respective claims of these parties. The defendants acquired no shadow of right to lay their tracks upon any public street prior to 1878. By the seventeenth section of the Act of 1872, the Legislature attempted to authorize the plaintiff and the North Beach and Mission R. R. Co. to lay horse-railroad tracks upon certain designated portions of said avenue. At that time, the Act of March 20th, 1870, was in force, which provided, among other

things, that "the trustees, city council, or supervisors of all incorporated cities or towns, or the supervisors of any city or county within the limits of such cities or towns, and the Boards of Supervisors of the various counties outside of such cities or towns, shall have the right to grant to any person or corporation the right to lay down and maintain, for a term not exceeding twenty-five years, an iron railway track or tracks upon any streets or avenues or public highways in said cities or towns, or in said counties outside of said cities or towns, and to run cars thereon, to be propelled by horses (or otherwise as hereinafter provided), and to carry passengers or freight thereon."

With a slight change in its phraseology, this provision was adopted into the Code, and is now in force. We do not doubt that it falls within the definition of " a law of a general nature," and that as such it must have, under our Constitution, "a uniform operation." Both the late and the present Constitution declare, that "all laws of a general nature shall have a uniform operation." By excepting any particular persons or corporations from the operation of any such law, the uniformity thereof is at once destroyed. And § 17 of the Act of 1872, if constitutional, does exempt the two corporations named in it from conditions upon which only can any other individual or corporation acquire a similar right. It therefore necessarily follows, that if the act which prescribes how and in what manner individuals or corporations generally may acquire a right to lay street-railroad tracks upon public streets be a law "of a general nature," the act which attempts to exempt any particular corporation or corporations from its operation prevents the uniform operation of a law "of a general nature," and therefore must be held to be void.

And if void, the plaintiff laid its tracks on Montgomery avenue without any authority or license so to do. It is not the case of a corporation doing an act which it had a right to do upon a certain condition which it omitted to fulfill. In such a case, it might well be held, that the question whether the condition had been complied with could alone be raised by the granting power.

In *R. R. Co.* v. *Leavenworth*, 1 Dill. 393, Dillon, C. J., denied an application for an injunction to restrain the city author-

ities from tearing up and removing railroad tracks which had been laid upon a public street upon conditions specified in the grant to lay them there, which had not been complied with.

But if the Act of 1872 be void, the plaintiff had no right to lay its tracks upon Montgomery avenue, upon any condition. The question is not, whether it has forfeited any right so to do. It never had any such right, and could not forfeit a right which it never had. The defendants acquired the right under the general law to lay their tracks upon a street which the plaintiff occupied without any authority so to do. Have the defendants the right to remove an unauthorized obstruction or impediment to the prosecution of their work? Does the fact, that such obstruction or impediment consists of tracks laid down by other corporations without license or authority, affect the question of the defendants' rights in the premises? We are unable to perceive, under the circumstances, that the plaintiff's right of property in its railroad tracks is any more sacred than it would be in lumber and iron which it might have placed upon the street, in any other form. Its right of property would be sacred in either event, but the right to remove it as an obstruction would not depend upon the form in which it was placed upon the street. If it was placed there without authority, upon what ground can an injunction be asked to prevent its removal? That writ is granted to protect people in their rights, and not to enable them to perpetuate a wrong. We are therefore of the opinion, that if the defendants were the first to acquire the right to construct a railroad upon Montgomery avenue, they have a right to remove any unauthorized obstruction or impediment to the prosecution of their work, including railroad tracks which have been laid there without authority. In all the cases which have been brought to our attention, the tracks which it was sought to have protected from the use of other than the corporations which laid them had been laid in the streets by authority which was not questioned. The distinction between those cases and this is, to our minds, an all-important one.

In *San Francisco* v. *Spring Valley Water Works*, 48 Cal. 493, this Court was divided upon the question whether a grant, by a special act to a private corporation, of an easement over a public street, not common to the public at large, would not be

repugnant to that clause of the Constitution which provides, that " corporations may be formed under general laws, but shall not be created by special act." The question whether certain corporations could be exempted by special act from the operation of a general law applicable to all persons and corporations was not discussed in that case, although Mr. Justice McKINSTRY said, that " the Legislature could neither confer a benefit nor impose an obligation on the Spring Valley Water Works not conferred or imposed on all water companies by the *general law*." Whether or not the seventeenth section of the Act of 1872 is in contravention of the clause of the Constitution discussed in that case, may still be a moot point, and we do not base our decision of this case upon that clause. And yet it is sufficiently apparent to us, that the clause discussed in that case, like the one upon which we base this decision, was adopted for the purpose of preventing partial legislation, such as is attempted by the seventeenth section of the Act of 1872. Under the Act of 1870, it was undoubtedly competent for the municipal authorities to grant rights of way upon reasonable conditions. (*Railway Co.* v. *Mayor etc. of Baltimore*, 21 Md. 93; *R. R. Co.* v. *Leavenworth*, 1 Dill. 393.) And the Civil Code expressly confers that power upon such authorities. (Civ. Code, § 497.) By the seventeenth section of the Act of 1772, an attempt is made to deprive the city and county of San Francisco of the right to impose any conditions upon the corporations named in said act. It discriminates in favor of said corporations, and against said city and county.

It is suggested, however, that the right subsequently granted to the plaintiff by the Board of Supervisors, coupled with the fact of actual occupation under it, entitles the plaintiff to the protection which it seeks in this case. The law by virtue of which these grants were made must be our sole guide in determining this question. Under that law, the defendants were granted a right of way on Montgomery avenue, from its intersection with Montgomery street to Union street; and the plaintiff, was subsequently granted a right of way over the same avenue, from Montgomery street to Powell street. If these grants are valid, two railroad corporations are entitled to use the same street for a distance of more than five blocks, and that, too, without each paying an

equal portion of the construction of the track.   The law provides, that "two corporations may be permitted to use the same street, each paying an equal portion for the construction of the track; but in no case must two railroad corporations occupy and use the same street or track for a distance of more than five blocks."   (Civ. Code, § 499.)

The first clause of this section clearly means, that a right to use the same street cannot be granted to more than two corporations in any case, and if granted to two, it must be upon the condition that both use the same track, and that each pay an equal portion of the cost of constructing it.   The second clause contains nothing which conflicts with the construction of the first; but simply adds another limitation; viz., that "in no case must two railroad corporations occupy and use the same street or track for a distance of more than five blocks."   If the provision of the first clause had been, that two railroads might use the same *track*, each paying an equal portion for the construction of it, there might be some difficulty in determining what it meant.   But when it permits them to use the same *street* on that condition, and on that condition only, the limitation is not at all qualified in that respect by the subsequent clause, which, as before remarked, simply adds a further limitation, which in no sense can be regarded as inconsistent with that contained in the preceding clause.   And it may well be doubted, if a case will ever arise in which the wisdom, if not actual necessity, of some such limitation upon the powers of the Board of Supervisors in respect of the granting of these privileges, as is imposed by this section of the Code, will be more forcibly illustrated than it is in this case.   The record before us discloses the fact, that the board has granted to three corporations the right of way over the same portion of a public street, each having a right to construct a double track thereon.   This might, and doubtless would oftentimes, result in bringing six cars abreast upon said street, which would, for the time being, prevent the passage of all other vehicles.   And at all other times, so large a number of tracks with cars running upon them would interfere unreasonably with the ordinary use of the street.   The limitation is not only in the act, but very properly there, and we are not disposed, even if we had the power, which we have not, to modify it in the slightest degree.

We do not doubt, that the grant made by the Board of Supervisors to the plaintiff is absolutely void. (*People* v. *Rich*, 54 Cal. 74.)

That the Board of Supervisors may, if it sees fit so to do, grant to the plaintiff the right to use the defendant's track upon the terms prescribed by law, we entertain no doubt. And we understand that the defendants concede that.

The question whether or not the defendants did sufficient work within one year after obtaining their franchise to save it from forfeiture, remains to be considered. If they did not, it is claimed, upon the authority of *The O. R. R. Co.* v. *The O. B. & F. V. R. R. Co.* 45 Cal. 365, that they may be enjoined in this action from commencing work after the expiration of that period. The general law, and the order by which the franchise was granted, required that work upon said railroad should be commenced within one year after the passage of said order, but how much work, or at what point, or in what manner it should be done, is not specified. We find in the transcript an admission by counsel for the plaintiff, " that the work done by the defendants, at the crossing of Union and Jones streets, was done within one year after the 10th day of October, 1878, the date of the first grant to defendants by the Board of Supervisors." The Court below declares in its decision, which is incorporated in the record before us, that " within a year from the grant of the franchise, the defendants commenced the construction of their road." Whether they did or did not, was a question of fact for the Court below to determine; and there being evidence that work was commenced by the defendants on said railroad within one year after the granting of the franchise, we cannot disturb the order and judgment of that Court on the ground that the amount of work was insufficient, because the law does not prescribe how much shall constitute a commencement. It was entirely competent for the Legislature to have defined what should be deemed a commencement of work. In the absence of any such legislative definition, we are clearly of the opinion, that the amount of work proved to have been done within one year justified a finding that the work had been commenced on said railroad within that period. But the law does not declare that a failure to comply with the provision which requires work to be com-

menced within one year works a forfeiture, but that a failure to comply with that and the provision which requires that it shall be completed within three years works a forfeiture; and even then, it is optional with the authorities granting the right of way whether the forfeiture shall be total or partial. In view of these provisions, it is quite clear, we think, that the Court, in this proceeding, would not be justified in holding that the rights of the defendants have been forfeited.

Judgment and orders appealed from affirmed.

McKEE, J., concurred.

MYRICK, J., concurring:

I concur in the judgment, upon the ground first discussed in the foregoing opinion, viz., as to the invalidity of the Act of 1872, and upon the ground that the defendants performed sufficient work to prevent their rights from becoming forfeited. I do not, however, concur in full in the construction placed by my associates upon § 499 of the Civil Code.

McKINSTRY, J., concurring:

I concur. Section 31 of article iv of the former Constitution of the State reads: "Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes. All general laws and special acts passed pursuant to this section may be altered from time to time, or repealed." This section has been judicially constructed by the Supreme Court of the State in *The City and County of San Francisco* v. *The Spring Valley Water Works*, 48 Cal. 493, and *Waterloo Turnpike Company* v. *Cole*, 51 id. 381. By reason of the section of the Constitution above recited, the Legislature of California had no power by special act to confer upon a corporation formed or to be formed under the general laws corporate powers not acquired by all like corporations under the general laws. I do not propose to fortify the reasoning of Mr. Justice Crockett, in *San Francisco* v. *Spring Valley Water Works*. In itself, eminently satisfactory, it accords with established canons of constitutional and statutory construction. My purpose is simply to show that, to the extent above inti-

mated, the construction of the provision of the Constitution has been " settled " by the highest tribunal of the State.

It was claimed at the argument, that in *California State Telegraph Company* v. *Alta Telegraph Company*, 22 Cal. 398, it had been held that § 31 of article iv of the former Constitution did *not* prohibit the Legislature from conferring special corporate rights and powers, by special act, upon a corporation formed under the general laws.    And, in connection with the alleged doctrine of that case, our attention has been strenuously called to the opinion of Mr. Justice Sawyer, of the Circuit Court of the United States (Dist. California), in *Southern Pacific Railroad Company* v. *Orton*, which contains a somewhat elaborate review of the two cases in the Supreme Court of the State.    Surely, the opinion of the Circuit Judge is not appealed to by counsel as an authoritative reversal of the construction given by the Supreme Court of the State to a clause of our own Constitution.    It is presumed that the learned judge, who presides with so much ability over the Circuit Court of the United States, would be the first to acknowledge, that upon such a question it would be his duty to follow the rule as settled by the highest State tribunal.    The learned judge of the Circuit Court deemed himself at liberty to adopt his independent view in respect to the proper interpretation of the section of the State Constitution, in the absence, as he conceived it, of any settled construction by the Supreme Court of the State.    He held that the provision of the State Constitution above quoted did not prohibit a special act conferring special corporate powers on a corporation already organized under the general laws—notwithstanding the Supreme Court of the State, in *San Francisco* v. *S. V. Water Works*, had decided that the prohibition operated to that extent.    He believed the question not to be settled in the Supreme Court of the State, because two of the justices of the State Court, then composed of three justices, had expressed an opinion, in *California State Telegraph Co.* v. *Alta Telegraph Co.*, that the constitutional prohibition did not attach ; while in *S. F.* v. *S. V. W. W.*, of a Court of *five* justices, *one* was disqualified and *one* dissented ; by the simple process of transferring the dissenting judge from the Court of *five* judges to the Court of *three* (a task rendered easier by the circumstance that both Courts had gone

out of existence, although with an interval of some fifteen years between their extinction), the learned justice of the Circuit Court of the United States succeeded in arraying *three* State judges in favor of one construction of a provision of the State Constitution against *three* in favor of another construction of the same provision.

Adopting this arithmetical standard, there would be no difficulty, as is kindly suggested, for the present Court, composed of *seven* judges, to disregard the concurrent judgments of its predecessors, since *seven* or even *six* is a greater number than would constitute a majority of both the former Courts, could they be resuscitated and combined.

If the learned judge of the Circuit Court of the United States was correct in his understanding of the effect of the decisions in *California State Telegraph Co.* v. *Alta Telegraph Co.*, and *San Francisco* v. *S. V. W. Works*, they would simply constitute an instance in which the Supreme Court of the State had decided a question one way upon one occasion, and another way upon another occasion—a discordance not without precedent even in the courts of the United States. But without commenting on the somewhat unusual, and perhaps in every respect not altogether satisfactory, mode of arriving at the weight to be accorded judicial decisions, which consists in an enumeration of the judges (for and against) of two courts differently organized, and a convenient transfer of judge from one to the other, the learned justice of the Circuit Court of the United States was mistaken in his *facts*.

In *California State Telegraph Company* v. *Alta Telegraph Company* two important questions were presented. The first was the validity of the Act of May 3rd, 1852, which purported to grant to Messrs. *Allen* and *Burnham* the exclusive right and privilege of building and operating a telegraph line between San Francisco and Marysville. The second question was, whether the plaintiff, a corporation formed under the general laws, could take by assignment the rights and privileges granted to Allen and Burnham by the special act. Of the three judges then composing the Supreme Court of the State, one (Mr. Justice Norton) took no part in the decision. The other two (Cope, C. J., and Crocker, J.) concurred in the opinion, that

the provision of the Constitution above quoted (which, by its terms, applies only to *corporations*) did not prohibit the Legislature from granting by special act franchises to *individuals*. But as to the question whether the Legislature under the former Constitution had power to grant exclusive privileges to a corporation, *California State Telegraph Company* v. *Alta Telegraph Company* cannot properly be cited as authority. True, Mr. Justice Crocker, in support of his argument that the assignment of the franchise from the individuals to the corporation was valid, did say that there was nothing in the language of the Constitution which prohibited the Legislature from directly granting to a corporation already in existence, and created under general laws, special privileges in the nature of a franchise, by special act.   But to this proposition, Chief Justice Cope did not assent; but, on the contrary, declined to express any opinion in respect to it.   He said: " As to the power of the Legislature to grant the franchise in question, I have no doubt; and as to the capacity of the corporation to purchase, *the defendant is not the party to object.*   If the corporation in making the purchase has acquired property which, under the law of its incorporation, it had no power to acquire, all that can be said is, that it has exceeded its powers, and may be deprived of the property by a judgment of forfeiture.   *The question is one which the State alone can raise.*"   It is plainly a mistake, therefore, to assume that the Court decided in *California State Telegraph Company* v. *Alta Telegraph Company* that the Legislature had power, by special act, to confer upon a corporation formed under the general laws corporate powers and privileges not acquired by other corporations formed under the same general laws.

It is equally a mistake to say, that all the judges who took part in *San Francisco* v. *Spring Valley Water Works*, 48 Cal. 493, did not agree that the Legislature had no such power. There is no dispute that three of the justices reached that conclusion.   Mr. Justice Rhodes dissented from the judgment, upon the ground that a grant of the right *to lay down water-pipes, etc., in the streets* was not a grant of *corporate power.* But on the question as to the legislative power to grant, specially, peculiar corporate powers to a corporation already formed

or to be formed under the general laws, Mr. Justice Rhodes said: "The proposition, that § 31 of article iv of the Constitution prohibits the passage of special acts granting corporate powers to corporations, other than those created for municipal purposes; that this inhibition extends as well to a special act conferring a particular corporate power as to an act providing for the entire organization of a particular corporation—is, in my judgment, fully sustained by the opinion of Mr. Justice Crockett."

Thus we see, that, in *California State Telegraph Company* v. *Alta Telegraph Company*, the Court did *not* decide that the Legislature had power under the Constitution, by special act, to grant special corporate powers and privileges to a corporation formed under the general laws, and that in *San Francisco* v. *Spring Valley Water Works*, the Court *did* decide to the contrary. It further appears (adopting for the nonce the method by enumeration), that, of six judges of the Supreme Court who took part in the decisions referred to, *one* only (Mr. Justice Crocker) expressed the opinion that such a special act was not prohibited by the Constitution.

It has been doubted whether the judgment in *San Francisco* v. *Spring Valley Water Works* determined that a grant of authority *to lay down pipes, etc.*, in the streets was grant of corporate power. If such was the effect of that judgment, it would seem that it is decisive of the question here presented in respect to the validity of the seventeenth section of the Act of April 1st, 1872. (Stats. 1871–72, p. 922.) Even assuming that *San Francisco* v. *Spring Valley Water Works* did not necessarily determine that a grant "to lay down pipes in the street" was a corporate power, I am of opinion that an attempt to make such grant to a corporation, by special act, would come within the inhibition of the Constitution. A special use of a public street, either by a water or street-railroad corporation, is inseparably connected with corporate powers, since the admitted powers of the corporation can be employed only through and by means of such special use.

A special act of the Legislature which should confer on a particular corporation, formed under a general law which gives to municipalities the power to permit railroad corporations to

lay down rails in the streets, the *exclusive* right to lay down rails within a municipality would, if valid, give to the particular corporation (to the exclusion of all others) the means of employing corporate powers which the general law attempts to confer upon all railroad corporations, at the option of the municipalities. It would be difficult to show that corporations possess any power which they are prohibited from bringing into action. In the case supposed, the special law would wholly deprive all corporations, except the one for whose benefit it was passed, of the right which the general law in terms confers upon them.

The same result, in a degree, must follow a special law, which, by granting the privilege of laying down railway tracks to a particular corporation, interferes with the acquisition of a similar privilege by other like corporations; as when, by the general law, the granting of the privilege is conferred upon the municipalities. That such must be the effect of the special provision of the law of 1872, is sufficiently apparent, from the consideration that the number of tracks which may be laid down in a street by railroad corporations is necessarily limited, since they cannot be so multiplied as to obstruct the use of the street by the public at large.

The Civil Code took effect January 1st, 1873. Section 497 of that Code, as it stood when the law of 1872, which purports to give the right to plaintiff to lay down its tracks in Montgomery avenue, was passed, provided:

"Authority to lay railroad tracks through the streets and public highways of any incorporated city or town may be obtained, for a term of years not exceeding fifty, from the trustees, council, or other body to whom is intrusted the government of the city or town, under such restrictions and limitations, and upon such terms and payment of license tax, as the city or town authority may provide. In no case must permission be granted to propel cars upon such tracks otherwise than by horses, mules, or by wire ropes running under the streets, and moved by stationary steam-engines, unless for special reasons, as hereinafter provided."

Section 17 of the Act of April 1st, 1872, purports to grant to plaintiff, and also to the "North Beach and Mission Railroad

Company," the right to lay down in Montgomery avenue an iron railway, with single or double track, with the conditions only, that the railroads be built simultaneously with the paving of the avenue, the "tracks" paved with like material, and that only one double track, to be paid for by both corporations, shall be laid between Stockton and Kearny streets. It will be seen, that the conditions accompanying the attempted grant are, in fact, different from those accompanying the grants from the city to the plaintiff and defendants. If the power exists in the Legislature, the special law may provide that the corporation grantee shall take the privilege to lay down tracks in a street unconditionally, free from any of the restrictions and limitations, and without being subjected to *any* of the terms, which, under the general law, may be imposed upon corporations asking the same privilege from the municipality.

Under § 497, the permission may be granted to individuals as well as to corporations; but so far as the section relates to corporations, it entered into and constitutes a part of the general law concerning the formation of street-railroad corporations. It follows, that § 17 of the Act of 1872 is repugnant to § 31, article iv, of the Constitution. It attempts to confer upon a particular corporation a means of employing its corporate powers in such manner as interferes with the rights of other like corporations formed under the general law.

If valid, such a law, in effect, "creates" a new corporation. The corporation, from the date of the passage of the special act conferring special privilege, is not, in respect of its privileges, the corporation formed under the general law.

And here it may properly be remarked, that the whole of the section of the Constitution is to be read together.

The first clause of the first sentence of the section—"Corporations may be formed under general laws"—is as important as the last clause of the same sentence—"but shall not be created by special act," etc. Corporations may be formed *only* under the general laws, but they are not formed nor created directly *by* the general laws. They are formed by individuals, under the general law; and when, in a particular instance, the corporate character is assumed, it is assumed with the same powers, privileges, and liabilities as are possessed by and imposed

upon all other like corporations formed by other individuals under the same general law. Corporations formed under the general laws do not exist anterior to the acquisition of the power to hold property, or any other corporate power. They come into existence panoplied. There can be no instance of the formation of a corporation under a general law which differs as to its corporate powers, or its liberty to employ them, from other corporations formed under the same general law; and there can be no creation, by special act, of a corporation which might or might not have been formed under the general laws.

I am also convinced, that the special enactment purporting to grant to plaintiff and another corporation the privilege of laying tracts in Montgomery avenue is invalid within the doctrine of *People* v. *Lynch*, 51 Cal. 15. It was there said: "The 'cities and villages' required to be created by our Constitution are cities and incorporated villages, with *franchises*. * * * From the very nature of such corporations, and from what has already been said as to the intent of the Constitution, that the legislative body of a city shall exercise choice and judgment with reference to expediency of action in matters appropriately confided to their care, it would seem to follow that the Legislature had no reserved power to set aside such choice or judgment, or to supersede the employment thereof in a particular instance."

I further believe, with Mr. Justice Sharpstein, that the section of the Act of 1872 conflicts with the provision of the former Constitution—"All laws of a general nature shall have a uniform operation."

I agree that § 499 of the Civil Code contains a limitation upon the authority conferred upon incorporated cities by § 497. It provides: "Two corporations may be permitted to use the same street, each paying an equal portion for the construction of *the track*; but in *no case* must two railroad corporations occupy and use the same street or track for a distance of more than five blocks." This either means that two corporations may use the same track (single or double) for a distance of five blocks, or that two may use the same street for that distance, using the same track, on the condition that each pay half

the expense of its construction—in case there is not room for laying the tracks by both.

I am satisfied it means the first of these two things, and that, when the privilege has been granted by the supervisors to one corporation, a second corporation can only ask (at the utmost) the privilege of using the tracks laid down by the corporation which has first acquired the right—on paying one-half the cost of construction. Neither corporation has any right in the street, except such is acquired under and in accordance with the law of the land.

Ross, J., dissenting:

I agree that the plaintiff acquired no rights under the act of the Legislature of 1872; but I do not think it follows from this that the defendants have the right to interfere with the track of the plaintiff. Section 502 of the Civil Code, which was in force at the time of the making of the grant under which the defendants claim, and which has been in force ever since, is as follows: "Work to construct the railroad must be commenced within one year from the date of the ordinance granting the right of way and the filing of articles of incorporation, and the same must be completed within three years thereafter. A failure to comply with these provisions works a forfeiture of the right of way as well as of the franchise, unless the uncompleted portion is abandoned by the corporation, with the consent of the authorities granting the right of way—such abandonment and consent to be in writing."

Within a year from the date of the grant to the defendants—that is to say, prior to October 10th, 1879—they (defendants) dug a trench at the corner of Jones and Union streets, about thirty-two feet long, about two feet wide, and from two to three feet deep, and then covered it over with macadam. Nothing more was done by them towards building their road until the latter part of June, 1880, shortly after which time this action was commenced. These facts clearly appear from the record, and are undisputed.

I am of the opinion, that the defendants forfeited the right of way granted to them by the ordinance of October 9th, 1878, by failing to comply with the provisions of the statute under

which the grant was made. When the Legislature said that the work must be commenced within one year from the date of the ordinance granting the right of way, and must be completed within three years thereafter, it meant that there must be a *bona fide* commencement of the work, and a *bona fide* prosecution of it, with reasonable diligence, to completion, within the prescribed time. It never intended that a sham commencement should answer its requirements. The trench dug by defendants was no more a compliance with the law than would have been the removal of half a dozen clods of earth.

The statute itself having declared the forfeiture, there was no need of a judicial declaration. (*O. R. R. Co.* v. *O. B. & F. V. R. R. Co.* 45 Cal. 365.)

Having forfeited whatever rights they acquired under the ordinance of November 9th, 1878, the defendants had no right to interfere with the street, or with the plaintiff's tracks.

Whether the use of the street by the plaintiff was with or without license, is no concern of the defendants. (*Market St. R. Co.* v. *Central R. Co.* 51 Cal. 583.)

I therefore respectfully dissent from the judgment.

THORNTON, J., dissenting:

I dissent. Conceding that the seventeenth section of the Act of 1872 is void, I am nevertheless of opinion that the track of the plaintiff corporation as laid down was lawfully in place, and that it could not be removed by defendants without its consent, and another put in its place, which it would be allowed by defendants to use. (See *Railway Co.* v. *Alling,* 99 U. S. 463, 475.) The injunction was improperly dissolved. The order of the Court below should be reversed, and the injunction restored.

MORRISON, C. J., dissented.